THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN M. BATES, Defendant-Appellant.

Fifth District   No. 5—86—0406

Opinion filed May 10, 1988.

Daniel M. Yuhas and Patricia G. Mysza, both of State Appellate Defender's Office, of Springfield, for appellant.

Dennis Doyle, State's Attorney, of Waterloo (Kenneth R. Boyle, Stephen E. Norris, and Wendy B. Porter, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Following a stipulated bench trial in the circuit court of Monroe County, defendant, Stephen M. Bates, was convicted of reckless homicide and sentenced to three years' imprisonment. Defendant appeals his conviction, arguing that statements made in the hospital to an investigating police officer should have been suppressed and that the results of a blood test taken at the hospital should not have been al-

lowed into evidence. We affirm.

At approximately 1 a.m. on July 22, 1984, an accident occurred in the westbound lane of U.S. Bypass 50 about one-tenth of a mile east of Jefferson Barracks Bridge. Defendant, going east, crossed the center line and hit head on a car going west, driven by Elmer Neuhaus. Mrs. Neuhaus, one of three passengers in the car, died in the accident. Witnesses, who were driving eastbound on I-270 in St. Louis shortly before the accident, testified they saw a car swerving in their lane hitting construction barrels, and after crossing Jefferson Barracks Bridge, swerve into the westbound lane striking another car.

Defendant was taken to St. Anthony's Hospital in St. Louis for treatment of injuries received in the accident. There he was given a blood test which revealed the alcohol content of his blood to be .237.

At approximately 2:30 a.m. the same morning, an Illinois State trooper in charge of investigating the accident arrived at the hospital to talk to defendant. Because of the nature of defendant's injuries, the trooper was not allowed to speak with him until 6:12 a.m. The trooper, in the presence of two nurses, asked defendant what had happened. Defendant answered he was driving eastbound before the accident and that the only thing he could remember was his car rolling over. The trooper, who, after viewing the accident scene, believed the point of impact was in the westbound lane, issued defendant a traffic citation for improper lane usage and then left.

Defendant argues on appeal that the trial court erred in denying his motion to suppress his statements made to the trooper while he was in the hospital. Defendant believes his statements should not have been admitted at his stipulated bench trial because they were taken in violation of his constitutional rights as set forth in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Specifically, defendant contends the trooper failed to give him *Miranda* warnings before questioning him while in custody, and additionally, his statements were involuntarily elicited from him as a direct result of physical or mental coercion. Defendant, however, mischaracterizes the trooper's actions and the circumstances surrounding the giving of his statements.

The trooper investigating the accident went to the hospital approximately an hour after the accident to get a description of what happened from each of the drivers. Some four hours later the trooper was permitted to talk briefly with defendant. Admittedly, he did not advise defendant of his constitutional rights prior to questioning him. But, such is a requirement only when an individual has been taken into custody or otherwise deprived of his freedom of action in any sig-

nificant way. *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612. See also *People v. Kenning* (1982), 110 Ill. App. 3d 679, 683-84, 442 N.E.2d 1337, 1340.

■ In order to determine whether an interrogation is custodial in nature, thereby necessitating the giving of *Miranda* warnings, a court must look to several factors: (1) the place of the interrogation; (2) statements or nonverbal conduct indicating that the accused is not free to leave; (3) the extent of the knowledge of the police officers and the focus of their investigation; (4) the intentions of the officers; and (5) the objective circumstances surrounding the investigation to determine what a reasonable man innocent of any crime would perceive. (*People v. Hendricks* (1986), 145 Ill. App. 3d 71, 113, 495 N.E.2d 85, 114; *People v. Romano* (1985), 139 Ill. App. 3d 999, 1009, 487 N.E.2d 785, 792. See also *People v. Gale* (1979), 72 Ill. App. 3d 23, 25-26, 390 N.E.2d 921, 923, *cert. denied* (1980), 445 U.S. 944, 63 L. Ed. 2d 778, 100 S. Ct. 1341.) Applying these factors here, it is clear that defendant was not in custody when questioned by the trooper in St. Anthony's Hospital.

■ Questioning which occurs in a hospital does not amount in itself to custodial interrogation. (*Romano*, 139 Ill. App. 3d at 1010, 487 N.E.2d at 793.) This does not mean that such questioning under certain circumstances never can amount to custodial interrogation. (See *People v. Braun* (1968), 98 Ill. App. 2d 5, 6-7, 241 N.E.2d 25, 26.) Those circumstances, however, simply do not exist here. Defendant's freedom of action was not restricted by the State. The investigating trooper never informed defendant he was not free to leave the hospital or that he was under arrest. Defendant was being treated in a Missouri hospital. The trooper had no arrest powers outside Illinois. Obviously, he did not consider defendant to be in custody during his questioning. The hospital staff was not instructed to restrain him or to notify the police when he was released. And, defendant was being treated in the emergency room just as any other patient in his condition would have been. Even the traffic citation which the trooper issued after talking with defendant was merely left with his personal belongings instead of being given directly to defendant. Clearly, defendant's freedom was not restricted by the police to an extent implicating custodial interrogation. See *Romano*, 139 Ill. App. 3d at 1010-11, 487 N.E.2d at 793-94.

■ Defendant argues the trooper believed he was at fault when he was questioned at the hospital, therefore the investigation was focused on him. The trooper, however, went to the hospital to question both drivers. He did not know which direction defendant was driving

prior to the accident, and it was not until after speaking with defendant that he determined defendant crossed the center line. Only then was a traffic citation issued. The trooper was not even aware that defendant had been driving under the influence of alcohol until talking to other witnesses sometime after questioning defendant. Moreover, *Miranda* warnings are not required merely because a defendant is a suspect. See *Romano*, 139 Ill. App. 3d at 1010, 487 N.E.2d at 793; *Kenning*, 110 Ill. App. 3d at 684, 442 N.E.2d at 1340.

Defendant was questioned very briefly by the trooper. The nature of the questioning was not accusatory; rather, it was a general inquiry as to what happened. Once defendant informed the trooper he remembered little about the accident, the trooper left. Moreover, defendant was not guarded by the police; he was free to go once his treatment was complete. An arrest warrant was not even issued for defendant until almost three months later. Surely no reasonable innocent man would have perceived that he was in custody at the time of the disputed questioning. *Miranda* warnings therefore were not required. Defendant's statements were merely the product of a routine investigation. As a result, the trial court committed no error in not granting defendant's motion. See *Romano*, 139 Ill. App. 3d at 1009-13, 437 N.E.2d at 792-95; *Kenning*, 110 Ill. App. 3d at 684, 442 N.E.2d at 1340; *People v. Clark* (1977), 55 Ill. App. 3d 496, 500, 371 N.E.2d 33, 37.

■ Defendant further argues the trial court erred in failing to suppress his statements because the State did not produce the two nurses who were present during the trooper's questioning at the suppression hearing. Defendant, however, has waived this issue. Defendant did not object at the suppression hearing to the State's failure to call these witnesses and he did not raise the issue in his post-trial motion. (See *People v. Carpenter* (1976), 38 Ill. App. 3d 435, 441, 347 N.E.2d 781, 787; *People v. Houston* (1976), 36 Ill. App. 3d 695, 700, 344 N.E.2d 641, 645-46, *cert. denied sub nom. Gibson v. Illinois* (1977), 429 U.S. 1109, 51 L. Ed. 2d 562, 97 S. Ct. 1143; Ill. Rev. Stat. 1985, ch. 38, par. 114—11(d). See also *People v. Killings* (1986), 150 Ill. App. 3d 900, 909, 501 N.E.2d 1363, 1369.) More importantly, defendant has presented no evidence of coercion. Consequently, there is no inquiry to which the nurses' testimony would have been relevant. The State therefore was not required to produce them. (See *People v. Connell* (1980), 91 Ill. App. 3d 326, 330-31, 414 N.E.2d 796, 800.) Finally, assuming the State was required to produce the two witnesses, any error in admitting defendant's statements was harmless. The fact that defendant was traveling eastbound just prior to the acci-

dent was proved by other competent evidence. See *People v. Geitz* (1985), 138 Ill. App. 3d 670, 674, 485 N.E.2d 1349, 1352.

■ Defendant's second contention on appeal pertains to a blood test taken while he was in the hospital shortly after the accident. Defendant argues the results were privileged because the blood sample was taken by order of his treating physician in the course of treatment and defendant did not voluntarily disclose the results. In his *pro se* brief, defendant further contends the results should have been excluded from evidence because the test was not conducted in accordance with the standards promulgated by the Department of Public Health as required by section 11—501.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2).

Turning first to defendant's *pro se* contention, our supreme court has held that section 11—501.2 only applies to prosecutions for driving under the influence as defined in section 11—501 and not to prosecutions for reckless homicide. (See *People v. Murphy* (1985), 108 Ill. 2d 228, 236, 483 N.E.2d 1288, 1291. See also *People v. Emrich* (1986), 113 Ill. 2d 343, 351, 498 N.E.2d 1140, 1144.) Therefore, the trial court committed no error in not excluding from evidence the test results on this basis.

■■ ■ Upon reviewing defendant's primary contention, we find that not only were the test results not privileged to begin with, but also, assuming the results were privileged, defendant waived any such privilege by failing to assert it at the earliest opportunity and by putting the validity of the test itself in issue.

The physician-patient privilege exists to encourage free disclosure between a doctor and the patient and to protect the patient from embarrassment and invasion of privacy that disclosure entails. (*People v. Herbert* (1982), 108 Ill. App. 3d 143, 149, 438 N.E.2d 1255, 1259, *cert. denied* (1983), 459 U.S. 1204, 75 L. Ed. 2d 436, 103 S. Ct. 1190. See also *Novak v. Rathnam* (1985), 106 Ill. 2d 478, 482-83, 478 N.E.2d 1334, 1336.) Disclosure by the person benefiting from the privilege or allowed by him, however, operates as a waiver of the privilege. (*People v. Phillips* (1984), 128 Ill. App. 3d 457, 459, 470 N.E.2d 1137, 1139.) And, once there is disclosure, the privilege cannot be reasserted, for the confidentiality sought to be protected has been destroyed. (*Novak*, 106 Ill. 2d at 484, 478 N.E.2d at 1337.) Defendant allowed such disclosure here before ever asserting the privilege.

The results of defendant's blood-alcohol test were first revealed at the preliminary hearing. Defense counsel objected to admission of the results on the basis of improper foundation only. He did not assert

any privilege. Defendant next filed a motion *in limine* to exclude the test results, again on the grounds of improper foundation. No mention was made of a physician-patient privilege nor was any argued at the hearing on his motion. In fact, defendant elicited testimony as to a substantial part of the allegedly privileged information. It was not until almost one year later that defendant asserted the privilege after the results had already been revealed twice. Such assertion simply was too late.

More importantly, even if we were to find that defendant had not waived the privilege, we still could not rule in defendant's favor on this issue. An exception to the physician-patient privilege exists specifically in homicide cases when "disclosure relates directly to the fact or immediate circumstances of the homicide." (Ill. Rev. Stat. 1985, ch. 110, par. 8—802.) Evidence of intoxication relates directly to the fact or immediate circumstances of the homicide in this instance, for evidence of intoxication is probative on the issue of recklessness. (*People v. Gittings* (1985), 136 Ill. App. 3d 655, 660, 483 N.E.2d 553, 558; *People v. Bolar* (1982), 109 Ill. App. 3d 384, 392, 440 N.E.2d 639, 645; *People v. Davis* (1982), 105 Ill. App. 3d 129, 133, 434 N.E.2d 13, 16.) Recklessness is an element of the offense of reckless homicide. Consequently, any evidence which is probative of the issue of recklessness certainly relates directly to the immediate circumstances of the homicide. Evidence of intoxication, therefore, is not privileged information in a reckless homicide case. (See *People v. Walljasper* (1981), 97 Ill. App. 3d 81, 84, 422 N.E.2d 251, 253. See also *People v. Hester* (1968), 39 Ill. 2d 489, 516-17, 237 N.E.2d 466, 482, *cert. dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408; Ill. Rev. Stat. 1985, ch. 38, par. 9—3(b) (in reckless homicide cases, being under the influence of alcohol is *prima facie* evidence of reckless act) (statute enacted after defendant's offense).) As a result, the trial court did not err in admitting into evidence the results of defendant's blood-alcohol test.

For the reasons stated above, we affirm the judgment of the circuit court of Monroe County convicting defendant of reckless homicide.

Affirmed.

WELCH and LEWIS, JJ., concur.