STATE of Iowa, Appellee,

v.

**Roy Edward ELDRENKAMP, Appellant.**

No. 94–2020.

Supreme Court of Iowa.

Dec. 20, 1995.

Linda Del Gallo, State Appellate Defender, and Sharon R. Stevens, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and Phillip Tabor, County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

A jury found the defendant guilty of the crimes of vehicular homicide, child endangerment, and operating a motor vehicle while license was revoked. The court entered judgments and sentences upon the verdicts. On appeal the defendant claims the court erred in failing to grant his motion to suppress and in denying his motion for judgments of acquittal. Upon completion of our review of the record, we affirm.

I. *Background.*

On the evening of August 25, 1993 a motorcycle accident occurred on the causeway between Sabula, Iowa and the Iowa–Illinois bridge over the Mississippi River. Roy E. Eldrenkamp of Savannah, Illinois, his four-year-old son Corey, and James Townsend were on a 1971 Honda motorcycle owned by Roy when it struck a reflector post and guard rail. The parties dispute who was driving at the time of the accident. The motorcycle came to rest in the middle of the causeway approximately 179 feet from the point of impact.

The causeway extends in a northeast direction from Sabula which is approximately three miles from the bridge. The accident occurred approximately one quarter mile from the bridge in a posted thirty-five miles-per-hour speed zone where the causeway takes a sharp turn to the right before crossing over the bridge into Savannah. At the time of the accident there was a temporary construction stop light on the causeway approximately one mile from Sabula.

As a result of the accident Townsend was killed. Corey and Roy were injured and taken to the Savannah City Hospital by the first motorist who arrived at the accident scene.

The first law enforcement officer to arrive was Savannah police officer Stacey Bradley–Handel. She observed the dead body of Townsend and was told two other persons were injured and had been taken to the Savannah hospital. When Iowa law enforcement officers arrived at the scene, she went

back to the Savannah hospital and spoke to Roy.

Roy told her Townsend had been driving the motorcycle and that they had "lost it." The officer had known Roy before the accident and she observed a very strong odor of alcohol on his breath while talking to him in the hospital emergency room. While she was at the Savannah hospital a helicopter was summoned to take Corey, who was seriously injured, and his father Roy, who was released after treatment, to the hospital in Rockford, Illinois. Officer Bradley–Handel then returned to the accident site.

Upon her return she conferred with investigative officers including Chris Turner, a trooper of the Iowa Highway Patrol. Turner was a designated accident reconstructionist as a result of his specialized training and experience. Officer Bradley–Handel concluded Roy may have been the driver of the motorcycle. She returned to Savannah, swore out an affidavit for a warrant, and obtained a search warrant from an Illinois judge to secure a vial of blood taken from Roy upon his admission to the Savannah hospital. After the warrant was served the hospital delivered the vial to Bradley–Handel. She then delivered the vial to a deputy sheriff of Jackson County, Iowa, who turned it over to Trooper Turner. He delivered the vial to the Iowa Criminalistics Laboratory for testing. The test revealed an alcohol content of .172 and a written report was made by the lab.

The Jackson County Medical Examiner, who was at the accident site, determined Townsend's death was caused by a blunt force trauma to the back of his head, "due to collision with the roadway." He took a sample of the deceased's blood which when tested revealed an alcoholic content of .343.

On July 1, 1994, a trial information was filed charging Roy Eldrenkamp with the crime of homicide by vehicle alleging he had unintentionally caused the death of Townsend by operating a motor vehicle while having an alcohol concentration of .10 or more in violation of Iowa Code section 707.6A(1)(a) (1993); with child endangerment by knowingly acting in a manner that created a substantial risk to Corey Eldrenkamp's physical safety in violation of Iowa Code section 726.6(1)(a) and (2); and operating a motor vehicle on a public highway while his license had been revoked pursuant to Iowa Code section 325J.21.

The defendant filed a timely motion to suppress the results of any test of his blood and any testimony connected with the drawing or testing of the blood. The defendant urged the seizure of his blood sample violated the Fourth and Fifth Amendments to the Constitution of the United States, violated his doctor-patient privilege guaranteed by Iowa Code section 622.10, and the drawing and seizure of blood violated the procedures of Iowa Code sections 321J.10 and .11. Prior to hearing on the motion to suppress the parties stipulated to the facts. After hearing Judge Havercamp, on October 21, 1994, denied the motion to suppress.

The case was tried to a jury beginning on October 31. The trial judge, David H. Sivright, denied the defendant's motions for judgments of acquittal. The case was then submitted to a jury which returned guilty verdicts on all three charges.

On appeal Eldrenkamp raises two issues. First, he urges the motion to suppress should have been granted because the blood sample was seized in violation of his doctor-patient privilege. Second, he argues the motion for judgments of acquittal on all charges should have been granted because there was insufficient evidence to establish that he was the driver of the motorcycle.

## II. *Ruling on Motion to Suppress.*

Eldrenkamp argues the physician-patient privilege prevents the admission of the blood test results. The burden of proof is upon the one who claims the privilege to show that it exists. *State v. Tornquist*, 254 Iowa 1135, 1155, 120 N.W.2d 483, 495 (1963). The motion to suppress was submitted to the court upon stipulated facts that included:

> On August 25, 1993 at approximately 8:30 p.m. there was a motorcycle accident on the causeway, between Sabula, Jackson County, Iowa, and the Iowa–Illinois bridge over the Mississippi River.

As a result of that accident, James E. Townsend was declared dead at the scene. Corey Eldrenkamp and Roy Edward Eldrenkamp were injured. All three individuals were occupants of the motorcycle.

Following the motorcycle accident, Roy Edward Eldrenkamp was transported to Savannah City Hospital. At the Savannah City Hospital, Roy was admitted. As a part of the admission procedure at Savannah City Hospital, a blood sample was taken from Roy Eldrenkamp.

The blood sample from Roy Eldrenkamp was taken by Pat Oviatt, MLT–ASCP, Pinacle Health Services. Pat Oviatt is a certified medical technologist and she took the blood sample according to the procedures at the hospital and used proper equipment which was sealed prior to being used and was appropriately used to take the blood sample which she stored in an appropriate place in the laboratory at Savannah City Hospital.

This blood sample was taken for purposes of medical treatment for injuries sustained by Roy Eldrenkamp, and medical treatment was provided to Roy Eldrenkamp that evening. This blood sample was not tested for alcohol content at the Savannah City Hospital.

This sample was not taken at the request of a peace officer.

Officer Stacey Bradley–Handel is an officer with the Savannah Police Department. Officer Bradley–Handel responded to the scene of the Townsend/Eldrenkamp motorcycle accident. At the scene, she learned that two of the people involved in the accident had left, going to the Savannah City Hospital. Officer Bradley–Handel went to the Savannah City Hospital and made contact with Roy Eldrenkamp and in discussing the traffic accident with Mr. Eldrenkamp, she detected the odor of an alcoholic beverage about Mr. Eldrenkamp's breath. Officer Bradley–Handel noted that Mr. Eldrenkamp was released from the hospital after examination. Officer Bradley–Handel then went back to the scene and in talking with investigating officers, determined that Roy Eldrenkamp may have been the driver of the motorcy-

cle. Officer Bradley–Handel went back to Savannah, Illinois, swore out an affidavit for a search warrant and obtained a search warrant from the Circuit Court of the Fifteenth Judicial District, County of Carroll, State of Illinois, for the vial of blood taken from Roy Eldrenkamp on his admission to the Savannah City Hospital. Officer Bradley–Handel served the warrant at the Savannah City Hospital, along with deputy Steve Schroeder of the Jackson County Sheriff's Department, seized the vial of blood which had been obtained from Roy Eldrenkamp by Pat Oviatt, and turned the blood over to Steve Schroeder of the Jackson County Sheriff's Department. The blood sample was then given to trooper Chris Turner of the Iowa State Patrol, who turned it over to trooper John Simons of the Iowa State Patrol, who turned it over to Iowa DCI lab for testing by Kelvin Rayburn, who tested the blood with a result of .172 grams per 100ml.

Roy Eldrenkamp did not refuse chemical testing and the withdrawal of his blood sample was not done based upon a refusal to consent to chemical testing.

In denying the motion to suppress, the court recognized there was a physician-patient relationship but concluded the privilege was not implicated because the blood sample was seized based upon a search warrant. On appeal the defendant argues the State had no authority to require the production of the blood sample because a confidential relationship existed. Since no implied consent procedure was invoked, he contends the blood sample was protected by the physician-patient privilege. The defendant urges the blood sample taken at the direction of his physician for medical reasons was a "communication" protected under Iowa Code section 622.10.

Because the blood sample was not tested by the hospital, the State argues it was not a privileged communication or information acquired during the course of the physician-patient relationship. The State also argues the blood sample was properly seized pursuant to warrant in Illinois and the results of a test of the blood sample should therefore be admissible in the Iowa court. Illinois law

expressly provides the physician-patient privilege does not apply "in trials for homicide when the disclosure relates directly to the fact or immediate circumstance of the homicide...." Ill.Ann.Stat. ch. 735, para. 5/8–802 (Smith–Hurd) (1988). The State urges that the Iowa court apply the privilege law of Illinois.

Iowa Code section 622.10 provides in part a physician

> who obtains information by reason of the person's employment ... shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

■ We have stated that the "physician-patient privilege is intended to promote free and full communication between a patient and his doctor so that the doctor will have the information necessary to competently diagnose and treat the patient." *State v. Deases*, 518 N.W.2d 784, 787 (Iowa 1994). We construe the statute liberally to carry out its manifest purpose. *Id.* The essential elements of the privilege are: (1) the relationship of physician-patient; (2) the acquisition of information during the relationship; and (3) the necessity and propriety of the information to enable the physician to treat the patient skillfully. *Id.; Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981).

■ We have construed the word "communication" to mean "all knowledge and information gained by the physician in the observation and personal examination of the patient in the discharge of his duties." *State v. District Court*, 218 N.W.2d 641, 643 (Iowa 1974). The privilege extends to medical records that contain information which would be inadmissible at trial as oral testimony from the physician. *Chidester v. Needles*, 353 N.W.2d 849, 852 (Iowa 1984). The information placed in hospital records is privileged communications under section 622.10 "to the same extent that the knowledge and information of the examining or treating physician is privileged." *Newman v. Blom*, 249 Iowa 836, 844, 89 N.W.2d 349, 355 (1958). Infor-

mation or data recovered from the testing of blood is information furnished passively, through submission to inspection, and is generally under the protection of the physician-patient privilege. *See* 8 Wigmore, *Evidence* § 2384 (McNaughton rev. 1961).

■ The privilege is not designed as a shield behind which a patient can conceal information. *State v. District Court*, 218 N.W.2d at 644; *State v. Bedel*, 193 N.W.2d 121, 124 (Iowa 1971); *see also* 8 Wigmore § 2388, at 855. If a patient consents to withdrawal of a blood sample for testing of its alcoholic content, the physician-patient privilege is waived. *State v. Staker*, 220 N.W.2d 613, 617 (Iowa 1974); *State v. District Court*, 218 N.W.2d at 644. Where a specimen is voluntarily given for nonprosecutorial purposes, it may be subject to a search warrant issued three months later. *State v. Oakley*, 469 N.W.2d 681, 682–83 (Iowa 1991).

We conclude the trial court correctly denied the defendant's motion to suppress. No physician-patient privilege existed at the time blood was withdrawn from the defendant by hospital personnel in Illinois. The State of Illinois specifically excludes the physician-patient privilege in homicide cases. As such, the blood was subject to seizure by warrant. The subsequent testing of the blood by the Iowa Criminalistic Laboratory and its report of the test results were not the product of a professional relationship protected by the Iowa professional privilege, section 622.10.

Additionally, we believe the blood test results would be admissible under Illinois law. *See People v. Bates*, 169 Ill.App.3d 218, 119 Ill.Dec. 919, 923, 523 N.E.2d 675, 679 (Ill.App.5th 1988). Under the Restatement (Second) of Conflict of Laws section 139(1) (1971):

> Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.

Illinois is the state which has the most significant relationship with the communications.

Eldrenkamp was a resident of Illinois, he was in a hospital in Illinois, and under the care of an Illinois doctor. The blood was withdrawn in Illinois. It would be reasonable for him to expect Illinois law to control the extent of the physician-patient privilege.

### III. *Motion for Judgments of Acquittal.*

On motion of a defendant, the court shall enter a judgment of acquittal on the criminal charge if there is insufficient evidence to sustain the conviction. Iowa R.Crim.P. 18(8). On appeal we review the record in the light most favorable to the State and are bound by the jury verdict unless there is no substantial evidence to sustain it. *State v. Peck*, 539 N.W.2d 170, 172 (Iowa 1995); *State v. Liggins*, 524 N.W.2d 181, 186 (Iowa 1994).

Here, the fighting issue at trial was whether Eldrenkamp was the operator of the motorcycle at the time it collided with the warning post and guard rail. We find substantial evidence was received at trial to support a finding the defendant was the operator. One witness, who had known Eldrenkamp for over fifteen years, testified he saw him on the motorcycle near the temporary stop sign located approximately one mile from Sabula. He observed that Eldrenkamp was driving the motorcycle and another gentleman was on behind. He yelled at Roy and Roy responded.

Two other witnesses, who had known Roy all of his life, testified they had come on the accident scene in their van immediately after it had occurred. They met Eldrenkamp carrying his son in his hands. They also observed a body in the middle of the road. When they were about to take the Eldrenkamps to the hospital, Roy said, "I think I killed that guy." When asked who it was, Roy said, "Jim Townsend."

In addition State Trooper Turner testified that it was his opinion that Townsend was on the rear seat and Eldrenkamp was the operator of the motorcycle. This opinion was based upon his experience and training as an accident reconstructionist and based upon his examination and investigation of the accident scene shortly after the accident had occurred. He had also determined the motor-

cycle was traveling at a minimum speed of forty-nine miles per hour at the time of impact with the guard rail.

The results of the blood test conducted by the Criminalistics Lab were admitted at trial. After the State had laid a proper foundation, the official report was admitted under Iowa Code section 691.2. Under this statutory provision any report or findings of the Criminalistics Laboratory shall be received in evidence in any court in the same manner and with the same force and effect as if the employee who accomplished the requested analysis had testified in person.

We find there is substantial evidence to support a jury finding that the defendant committed the crimes charged.

**AFFIRMED.**