NO. 4-96-0777

IN THE APPELLATE COURT 

OF ILLINOIS

FOURTH DISTRICT

 

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from

Plaintiff-Appellee, )  Circuit Court of

v. )  Vermilion County

DANIEL W. DAVISON, )  No. 91CF224

Defendant-Appellant. )

)  Honor­able

   )  Thomas J. Fahey,

                            )  Judge Presiding. 

_________________________________________________________________

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In August 1996, defendant, Daniel W. Davison, filed 
pro
 
se
 a 
petition for postconviction relief, alleging various viola­tions of his constitutional rights.  In September 1996, the trial court dis­missed his petition as patently without merit, pursuant to section 122-2.1(a)(2) of the Post-Convic­tion Hearing Act (Act) (725 ILCS 5/122-2.1(a)(2)
 (West 1994)).  Defendant appeals, arguing that the court erred by summarily dismissing his peti­tion.  We affirm.

I.  BACKGROUND

In July 1991, the State charged defendant by informa­tion with three counts of home inva­sion (Ill. Rev. Stat. 1991 ch. 38, par. 12-11); two counts of attempt (aggravated criminal sexual as­sault) (Ill. Rev. Stat. 1991, ch. 38, par. 8-4, 12-14); one count of criminal sexual as­sault (Ill. Rev. Stat. 1991, ch. 38, par. 12-13(a)(1)); one count of aggra­vated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12-14(a)(1)); and one count of criminal tres­pass to a resi­dence (Ill. Rev. Stat. 1991, ch. 38, par. 19-4).  Pursuant to a plea agreement, defendant pleaded guilty to all of these charges except criminal trespass to a residence.  In ex­change for defendant's plead­ing guilty, the State dis­missed the charge of criminal tres­pass to a resi­dence and charges in a pending misde­mean­or case (No. 91-CM-616).  The State also agreed to offer a 90-year cap on impris­on­ment.  

In July 1992, the trial court accepted defendant's guilty plea and sen­tenced him to 15 years on three separate counts of home invasion and 20 years for aggravated criminal sexual assault, with all sentences to be served consec­u­tively, totaling 65 years in prison.  (We note that the home invasion counts involved the homes of three different women.)  The court did not enter judg­ment as to the remain­ing counts.

   Defendant did not appeal his guilty plea or sen­tences, but in August 1996, after several time exten­sions, he filed 
pro
 
se
 a peti­tion for postconviction relief, alleging his consti­tution­al rights were violated because he received ineffective assis­tance of counsel.  In Septem­ber 1996, the trial court dis­missed his peti­tion as patent­ly without merit, pursuant to section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a)(2)
 (West 1994)), and this appeal followed.  

II.  ANALYSIS

On appeal, defendant argues that the trial court erred by dismissing his 
pro
 
se
 petition because it presented the gist of a meritorious claim that he was denied his constitutional right to effective assistance of trial counsel (U.S. Const., amends. VI, XIV).   Specifically, defendant contends that his petition showed he re­ceived inef­fective assis­tance of counsel for the following reasons:  his trial counsel (1) failed to chal­lenge the factual basis and sufficiency of the charges in counts VI and VIII, charging home invasion and aggravated crimi­nal sexual assault, respectively; (2) refused to allow defen­dant to read the discov­ery materials the State provided to defense counsel; (3) failed to object to or file a motion 
in
 
limine
 barring the use of defendant's Veteran's Adminis­tra­tion Medical Center (VAMC) re­cords, which con­tained infor­ma­tion about crimes with which defendant had never been charged; and (4) failed to advise defendant that he could have pleaded guilty but mentally ill. 

A postconviction pro­ceed­ing brought under the Act (725 ILCS 5/122-1 
et
 
seq
. (West 1994)) constitutes a collat­eral attack on a judg­ment of convic­tion.  
The Act permits the trial court to sum­mari­ly dismiss a nonmeritorious petition.  725 ILCS 5/122-2.1(a)(2)
 (West 1994)).  
People v. Gaultney
, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996); 
People v. Lemons
, 242 Ill. App. 3d 941, 944, 613 N.E.2d 1234, 1238 (1993); 
People v. Dredge
, 148 Ill. App. 3d 911, 913, 500 N.E.2d 445, 446-47 (1986).  

To estab­lish a claim of inef­fec­tive assis­tance of trial counsel, a defen­dant must satisfy the stan­dards set forth in 
Strickland v. Wash­ing­ton
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  First, the defendant must prove that counsel made errors so serious, and counsel's perfor­mance was so defi­cient, that counsel was not functioning as the "coun­sel" guaran­teed by the sixth amendment.  To show that counsel's conduct was deficient, the defendant must overcome the strong presumption that the chal­lenged action or lack of action might have been the product of sound trial strate­gy.  
People v. Griffin
, No. 78812, slip op. at 3 (September 11, 1997), ____ Ill. 2d ____, ____, ____ N.E.2d ____, _____.

Second, the defendant must establish prejudice--that is, he must prove that a reasonable proba­bility exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reason­able proba­bil­i­ty is a proba­bil­i­ty suffi­cient to under­mine confi­dence in the outcome.  The prejudice prong of 
Strickland
 entails more than an "outcome-determinative" test.  
Griffin
, No. 78812, slip op. at 3, ____ Ill. 2d at ____, ____ N.E.2d at ____.  The defen­dant must also show that counsel's defi­cient performance rendered the result of the trial unreliable or the proceeding fundamental­ly unfair.  
Grif­fin
, No. 78812, slip op. at 3, ____ Ill. 2d at ____, ____ N.E.2d at ____.  

When a guilty plea is challenged on ineffective assis­tance grounds, the prejudice prong of 
Strickland
 is satis­fied if a reasonable probabil­i­ty exists that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial.  
Hill v. Lockhart
, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370 (1985); 
People v. Bien
, 277 Ill. App. 3d 744, 751, 661 N.E.2d 511, 516 (1996).  The record should also demon­strate a reason­able probability that, but for counsel's errors, the defendant would have rejected the plea ar­range­ment.  
People v. Pugh
, 157 Ill. 2d 1, 15, 623 N.E.2d 255, 262 (1993).  

If the inef­fec­tive assis­tance claim can be dis­posed of on the ground that the defendant did not suffer preju­dice, a court need not decide whether counsel's performance was constitu­tional­ly defi­cient.  
Griffin
, No. 78812, slip op. at 4, ____ Ill. 2d at ____, ____ N.E.2d at ____.

   A.  Counsel's Failure To Challenge Counts VI and VIII

Defendant first argues that his trial counsel erred by failing to challenge the factual basis and the suffi­ciency of the charges in counts VI and VIII.  We disagree. 

1.  
Count VI
 
(Home Invasion)

Section 12-11(a) of the Criminal Code of 1961 (Code) pro­vides that a person commits home invasion when he know­ingly enters another's dwelling place when he knows or has reason to know that one or more persons are present, 
and
 (1) while armed with a danger­ous weapon uses force or threat­ens the immi­nent use of force upon any person within the dwelling place whether or not injury occurs, 
or
 (2) intentionally causes any injury to any person or persons within such dwelling place.  Ill. Rev. Stat. 1991, ch. 38, par. 12-11(a) (now 720 ILCS 5/12-11(a) (West 1994)).

Specifically, defen­dant contends that the infor­ma­tion con­tain­ing count VI was insuf­ficient to charge him with home inva­sion.  That information alleged that on Decem­ber 13, 1990, defen­dant entered the dwelling place of L.C., knowing that she was inside, while armed with a dangerous weapon (a knife), and used or threat­ened to use force.  At the guilty plea hearing in Decem­ber 1991, defen­dant stated that he had not been armed with a knife, and the State agreed to strike "while armed with a danger­ous weapon" from count VI.  The trial court noted that it was still a Class X felony, and the State responded, "[i]t's still a Class X felony because he intend­ed to commit the rape, [and] he did commit a rape."  Neither defense counsel nor defen­dant disputed that statement.  

Defendant now claims that trial counsel erred by not challenging the sufficiency of that charge based on its failure to include all the elements of home invasion.  See Ill. Rev. Stat. 1991, ch. 38, par. 111-3(a) (now 725 ILCS 5/111-3(a) (West 1994)); 
People v. Hughes
, 229 Ill. App. 3d 469, 592 N.E.2d 668 (1992); see also 
People v. Pruden
, 110 Ill. App. 3d 250, 254, 442 N.E.2d 284, 287-88 (1982) (vacating conviction for home invasion because the charge lacked the words "while armed with a dangerous weap­on"); 
People v. Pettus
, 84 Ill. App. 3d 390, 393-94, 405 N.E.2d 489, 492 (1980) (reversing a conviction for home invasion when the phrase "with­out authori­ty" was omitted from the informa­tion).  Howev­er, the strict stan­dard defen­dant asserts this court should apply when consider­ing the suffi­ciency of count VI is appro­priate 
only
 when the defendant has first challenged the charge by a pretri­al motion to dis­miss.  In con­trast, when an information is at­tacked for the first time on appeal, it is suffi­cient if it contains adequate speci­ficity to enable the defen­dant to prepare his defense and to plead a resulting convic­tion as a bar to a future prosecu­tion arising from the same conduct.  
People v. Pujoue
, 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440 (1975); 
People v. Brown
, 259 Ill. App. 3d 579, 580, 630 N.E.2d 1334, 1335 (1994).

We note, however, that even the less stringent 
Pujoue
 stan­dard of review is still too rigorous to apply to this case because defendant here challenges the sufficiency of count VI in a postconvic­tion peti­tion alleg­ing inef­fec­tive assis­tance of coun­sel based upon his trial counsel's alleged failure to chal­lenge the infor­mation before defendant pleaded guilty.  Where the inade­quacy of a charge is first raised in that con­text, the 
Strickland
 standard applies. 

 Considering first the prejudice prong of 
Strickland
, we fail to see what possible preju­dice defen­dant might have suffered as a result of his trial counsel's failing to file a pretrial motion to dismiss count VI on the ground that it did not adequately charge home invasion.  Had trial counsel done so (and assum­ing 
arguendo
 the count was technically defi­cient), the trial court un­doubt­ed­ly would have granted the motion to dismiss, and the State would then have filed an amended count, adding any previ­ously missing statu­tory language.  The record before us makes clear that defendant was willing to plead guilty to home invasion and con­tains no sugges­tion that (1) he was misled about the factual basis for the charge, or (2) the count's alleged techni­cal deficien­cy affected his decision to plead guilty.  According­ly, defendant's petition fails the 
Strickland
 prejudice prong because it does not support a claim that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  
Bien
, 277 Ill. App. 3d at 751, 661 N.E.2d at 516.

2.  
Count VIII
 
(Aggravated Criminal Sexual Assault)

The infor­ma­tion for count VIII alleged that defendant know­ingly and by force committed an act of sexual penetra­tion with A.M.M. "while armed with a knife or danger­ous weap­on," in violation of section 12-14(a)(1) of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 12-14(a)(1)).  That section pro­vides that the accused must have "displayed, threat­ened to use, or used a dangerous weapon."

Defendant contends for the first time on appeal that because the infor­ma­tion alleges only that he was "armed with a knife," it fails to satisfy the statutory requirement that he "dis­played, threat­ened to use, or used a danger­ous weapon."  Because defen­dant did not raise this claim in his postconviction petition, the issue is waived.  725 ILCS 5/122-3 (West 1994).  
Howev­er, even if defen­dant had raised this issue in his petition, his trial counsel's alleged failure to challenge this charge in the trial court could not satisfy the prejudice prong of 
Strickland
 for the reasons we earlier discussed regarding count VI.  

   B.  Counsel's Failure To Provide Defendant 

with Discovery Materials

Defendant next argues that his right to effective assistance of counsel was violated when his trial counsel refused to allow him to read the State's discovery materials.  Specif­ically, defendant contends that the sixth amend­ment 
re­quires
 defense counsel to allow him to read those materials (U.S. Const., amend. VI)
.  He relies on 
People 
v. Smith
, 268 Ill. App. 3d 574, 579-80, 645 N.E.2d 313, 317-18 (1994), in which the First District Appellate Court held that a postconvic­tion petitioner is enti­tled to an evidentiary hearing on his claim that his trial counsel did not permit the petitioner to read the discovery materials.  

In 
Smith
, the petitioner had asked his attorney to subpoe­na police re­ports, and the police sent the reports to the petitioner's attorney.  Counsel knew that petitioner was anxious to view the police reports but did not show them to him.  The appellate court con­cluded that counsel's failure to provide the docu­ments was not a tacti­cal decision within the attorney's discre­tion.  
Smith
, 268 Ill. App. 3d at 579, 645 N.E.2d at 318.  The court reasoned that because resolu­tion of this issue re­quired inquiry into deal­ings between defense counsel and the petitioner that were outside the common-law record, the peti­tion­er was entitled to a hearing on his postconviction petition.  
Smith
, 268 Ill. App. 3d at 580, 645 N.E.2d at 318.  For the following rea­sons, we dis­agree with 
Smith
 and decline to follow it.  

A defen­dant in a criminal case has the right to decide certain issues in his case, even if his decision is contrary to his counsel's advice.  
Decisions belonging to the defendant are the following:  (1) whether to plead guilty; (2) whether to waive a jury trial; (3) whether to testify in his own behalf; (4) whether to submit an instruction on a lesser charge at the conclusion of the evidence; and (5) whether to appeal.  
People v. Brocksmith
, 162 Ill. 2d 224, 227-29, 642 N.E.2d 1230, 1232 (1994)
.  Essentially, all other trial decisions remain in the province of defense counsel, with the proviso that counsel should consult with the defendant to the extent--within counsel's discretion--such consultation would be helpful.  See 
People v. Anderson
, 266 Ill. App. 3d 947, 956-57, 641 N.E.2d 591, 598-99 (1994), for a 
partial
 list of trial decisions that are counsel's --not the defendant's--to make.  

Trial counsel's decision whether to provide his client with discovery materials constitutes a matter of trial strate­gy and judgment that ulti­mately lies within counsel's discretion.  Counsel might well think it not helpful for the defen­dant to read the discov­ery materi­als.  An unknowledgeable client may put great weight upon or become distracted by dis­crepancies in the discov­ery that counsel understands are trivial or of no import to the de­fense.  A defen­dant who chal­lenges his attorney's strate­gic deci­sions based upon the defendant's reading of discovery materi­als might disrupt counsel's manage­ment of the case and undermine the attorney-client relationship.  

Providing discovery materials to a defendant might also interfere with counsel's efforts to get his client to cooperate fully with counsel's efforts to understand the defendant's version of events.  The defendant could become fixated on what the State's witnesses say happened, making it more difficult for counsel to get defendant focused on those matters that counsel knows--due to his or her vastly greater training and experience--are important to the case.    

Furthermore, a holding that criminal defendants have a consti­tu­tion­al right to view all discovery materials would inevitably open the door to mani­fest abuse.  Communications between defen­dants and their counsel are almost always pri­vate.  Thus, a claim like that made in the present case by a postcon-viction petitioner that trial counsel violat­ed this pur­port­ed consti­tu­tional right could only be re­solved by obtaining informa­tion available out­side the record, effec­tively guaran­tee­ing 
at
 
a
 
minimum
 that every convicted defendant making such a claim would be entitled to a postconvic­tion hear­ing.  

To further demon­strate the very significant prob­lems such a holding could gener­ate, we pose the following hypothet-icals in which a convicted defendant asserts in his postcon-viction peti­tion (and will so testify at a hearing on that petition, if one is held) that he asked his trial counsel if he could read the discov­ery materials but was denied the opportuni­ty: (1) counsel dies in the interim between trial and postcon-viction peti­tion and no other evidence exists to dispute defendant's claims; and (2) counsel testifies that he cannot recall his client re­quest­ing discov­ery materi­als, but counsel recalls that he did not give them to defendant.  Further, al­though we have great respect for the ethics of the criminal defense bar, we must confront the possibility that a defense attorney could con­spire with his former client by agree­ing to testify that the attorney failed to provide the defendant with discov­ery materi­als, even though the defen­dant in fact either never re­quested to see those materi­als or was given them.  Defen­dants in each of these three cases might well prevail on their claims for postconviction relief despite those claims having no merit.

The law cannot be that defenseless.  Accordingly, 
we view 
Smith
 as unsound and decline to follow it.  

Our holding does not 
dimin­ish counsel's obliga­tion to inform the defendant of impor­tant matters related to his case, and we recognize that counsel has a duty to respond to the defendant's re­quests for infor­mation.  However, the issue here is not counsel's failure to communicate generally with the defen­dant, to inform him about the case, to keep him up-to-date on his status, or to return his phone calls.  Instead
, the issue is whether the defen­dant has 
a
 
constitu­tional
 
right
 to read discov­ery materials.  

Our holding is not inconsistent with standards of professional conduct.  The Supreme Court of Illinois has set forth Rules of Profes­sional Conduct in article VIII of the supreme court rules, and Rule 1.4 of Professional Conduct pro­vides as fol­lows:

"(a)  A lawyer shall keep a client rea­sonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b)  A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  134 Ill. 2d R. 1.4.  

Further, we note that section 4-3.8 of the American Bar Association (ABA) Stan­dards for Crimi­nal Justice, regard­ing a defense attorney's duty to keep a client informed, uses essen­tially the same lan­guage, provid­ing as fol­lows:

"(a)  Defense counsel should keep the client informed of the developments in the case and the progress of preparing the defense and should promptly comply with reasonable re­quests for information.

(b)  Defense counsel should explain develop­ments in the case to the extent reasonably necessary to permit the client to make in­formed decisions regarding the representa­tion."  ABA Standards for Criminal Justice 4-3.8, at 176-77 (3d ed. 1993).  

The commentary states that it is important to keep the client aware that the lawyer is actively attending to the client's interests.  The commentary also provides as follows:

"The client should be given sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued ***.  In litigation, a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others.  On the other hand, a lawyer ordinarily cannot be expected to describe trial or negotiation strategy in detail.  The guiding principle is that the lawyer should fulfill reasonable client ex­pectations for information 
consistent
 
with
 
the
 
duty
 
to
 
act
 
in
 
the
 
client's
 
best
 
inter­ests
, and the client's overall requirements as to the char­acter of representation."  (Emphasis added.)  ABA ­Standards for Crimi­nal Justice 4-3.8, Com­men­tary, at 178 (1993).

C.  Counsel's Failure To Object To Introduction of Defendant's

Mental Health Records at Sentencing

Defendant next argues that his counsel was ineffective for failing to object to--or file a motion 
in
 
limine
 barring the use of--defendant's mental health records at sentencing.  Accord­ing to defendant, the State introduced these records, which contained notes from private, confidential therapy sessions describing conduct for which defendant had never been charged or convicted.  Defen­dant con­tends that these records prejudiced him by "inciting the court to impose a longer sentence."

 Contrary to defendant's assertion, the record shows that defendant introduced the records at issue.  At the guilty plea hear­ing,
 defense counsel stated:

   "I would spe­cial­ly ask, [defendant] indi­cates there are medi­cal re­cords, medi­cal his­tory [tak­en] at the Veteran's Ad­ministra­tion Hos­pi­tal, which I would ask be included in the pre-sentence investigation and re­port."  

The subsequently prepared presentence report included defendant's statements that (1) he molest­ed an 11-year-old girl in 1988; (2) he raped a girl when he was 16; (3) he raped a 15-year-old girl when he was 23; and (4) he had been convicted in 1982 for rape and in 1986 for disorderly conduct.  

At the sentencing hearing, defendant testified on his own behalf that he had received professional counseling at the VAMC from June to August 1988.  On cross-examination, defendant testified that he told personnel at VAMC that (1) he had molest­ed an 11-year-old girl in 1988; (2) he raped a girl when he was 16; (3) he raped a 15-year-old girl when he was 23; (4) his 1982 rape conviction was the third time he had committed rape.  

The prosecutor argued that defendant's prior treatment had not worked and he was a danger to the public.  Defense counsel argued defendant had sought help and asked the trial court to consid­er defendant's psychologi­cal problems when impos­ing sen­tence.  

Defen­dant waived his privi­lege of confidentiality when he con­sented to reveal his mental health records, which he did by re­quest­ing, through his counsel, that the trial court consider those records.  
People v. Bates
, 169 Ill. App. 3d 218, 224, 523 N.E.2d 675, 679 (1988).  Section 10 of the Mental Health and Devel­op­mental Disabili­ties Confidentiality Act pro­vides that a defendant's medical records and commu­ni­ca­tions may be dis­closed in a criminal pro­ceeding in which the recipient of the mental health services introduces his mental condition or any aspect of his treatment for such a condition as an element of his claim or defense.  Ill. Rev. Stat. 1991, ch. 91 1/2, par. 810(a)(1) (now 740 ILCS 110/10(a)(1) (West 1994)). 

In addition to waiver, defendant's argument fails because he has not shown that he was preju­diced by the admis­sion of his mental health records.  During sentenc­ing, the trial court's reference to defendant's "activity as repre­sented in the pre-sen­tence report" could have referred to his prior convictions for rape and disor­derly con­duct.  Further, given defendant's prior convictions and the three different women upon whom defen­dant committed the terrible crimes to which he pleaded guilty (and the 90-year sentence the trial court could have im­posed pursuant to the plea agreement's sentencing cap, instead of the 65-year sen­tence it did im­pose), we con­clude that defendant fails to meet the 
Strickland
 standard that counsel's alleg­edly defi­cient perfor­mance preju­diced defen­dant.  

D.  Counsel's Failure To Advise Defendant of the Option 

To Plead Guilty But Mentally Ill

Last, defendant argues that his counsel was ineffective for failing to advise defendant that he could plead guilty but mentally ill (GBMI) (Ill. Rev. Stat. 1991, ch. 38, par. 113-4(d)).  Specif­i­cal­ly, defen­dant con­tends that if he had pleaded GBMI, the State would be obli­gat­ed to period­i­cal­ly examine him and provide treat­ment for his mental illness during his incarcer­a­tion.  730 ILCS 5/5-2-6(b) (West 1994).  

If a defendant offers to plead guilty but mental­ly ill, the trial court must order a psycho­logi­cal exami­nation of the defen­dant and hold a hearing on his mental condi­tion before accepting that plea.  If the court is satisfied that a factual basis exists that a defen­dant was mentally ill at the time of an of­fense, the court may accept the GBMI plea.  Ill. Rev. Stat. 1991, ch. 38, par. 113-4(d) (now 725 ILCS 5/113-4(d) (West 1994)).

In this case, defense counsel's failure to advise defen­dant that he might plead GBMI did not prejudice defendant, because even if he had been aware of that option, the record does not support defendant's contention that he was mentally ill at the time of the offenses or that the trial court would have accept­ed his GBMI plea.  The record showed that defen­dant was admitted to the VAMC in June 1988 and diag­nosed with pedo­philia, voyeur­ism, and person­al­ity disor­der.  When the VAMC dis­charged him in August 1988, the discharge summary stated that (1) he had been diag­nosed as having adjust­ment disor­der with distur­bance of conduct and personality order; and (2) he was "free of clinically apparent illness."  The court could have found that a factual basis did not exist for finding defen­dant mentally ill in 1991 when he commit­ted the crimes charged in this case.

Furthermore, defendant was subject to the same range of sen­tenc­es whether he pleaded guilty or GBMI.  Ill. Rev. Stat. 1991, ch. 38, par. 1005-2-6(a).  There­fore, even if counsel had recom­mend­ed that defen­dant plead GBMI and the trial court had accepted that plea, the outcome would have been the same.  Accord­ingly, counsel's failure to advise defen­dant that he could plead GBMI did not prejudice defendant.   

III.  CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GREEN, J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

I agree that defendants do not have a constitutional right to view all discovery materials and that the decision of which materials to furnish lies within defense counsel's discre­tion.  

I do not share the majority's concern that defense attor­neys will conspire with their former clients by agreeing to testify falsely on postconviction petitions.  Slip op. at 12.  I disagree that it is neces­sary for us to con­struct any special rule in order to prevent such miscon­duct.  In the unlike­ly event that such miscon­duct would occur, severe sanctions already exist to deal with it.