THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICKY E. PRUDEN, Defendant-Appellant.

Fourth District   No. 17389

Opinion filed November 10, 1982.

Daniel D. Yuhas and Gary S. Rapaport, both of State Appellate Defender's Office, of Springfield, for appellant.

Edmond H. Rees, State's Attorney, of Carlinville (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted by a jury in the circuit court of Macoupin County of the offenses of home invasion and armed robbery in violation of sections 12—11 and 18—2(a) of the Criminal Code of 1961. (Ill. Rev. Stat. 1979, ch. 38, pars. 12—11, 18—2(a).) He received concurrent sentences of 30 years and 20 years of imprisonment respectively and he appeals.

Although no questions of reasonable doubt are raised, a brief sketch of the facts is helpful in understanding the issues. At trial (there had been a prior hearing on a motion to suppress identification) the first witness was a deputy sheriff who stated that in the morning hours of January 18, 1981, he received a call concerning an alleged armed robbery at the residence of Brian and Monica Brown. He obtained a description of the perpetrator and his car from the Browns and this was broadcast through the police radio. He next received information about a car which appeared to be similar to the description and he thereupon drove to the defendant's brother's home and there obtained a photograph of defendant; he also determined that defendant owned an automobile similar to that used in the offenses. The officer stated that he had had a prior acquaintance with defendant.

He then repaired with the photograph to the Browns' home and exhibited it to them. They identified the individual portrayed as the offender. Further information was then received by radio that a car matching the description previously broadcast was seen at a tavern about five miles from the Brown residence. Officers then converged on the tavern and defendant, whose clothing matched the description given, was arrested as he entered a car, whose description matched that which had been broadcast.

Monica Brown was the next witness. A narrative of her testimony is as follows: she and her husband returned to their home from visiting relatives at about 12:50 a.m. on January 18, 1981; they parked their car in the driveway near their house and while they were still out-of-doors, another car pulled into the driveway and an individual got out and came up to converse with them; the area was lighted with a "dawn-to-dusk" pole light; she was carrying her five-week-old infant and left to go into the house; shortly after she entered the house and turned on the kitchen light where she and the infant were located, Mr. Brown and the man who had approached them outside entered, the man being directly behind Mr. Brown.

Mr. Brown instructed her to give the man all of their money and stated that he was holding a knife to his back; at this time she was unable to see the man and Mr. Brown switched off the light as he entered the kitchen; she obtained her purse and removed $103 from it and placed the money on the dishwasher; the man next moved into the living room where he turned on a small lamp, but Mrs. Brown was unable to see his face; he then returned to the kitchen and made some improper advances to Mrs. Brown while holding a knife to her back. During this time the infant was crying and the assailant directed her to do something to quiet the baby; she replied that the

baby was hungry and she would need some light by which to feed him; the man then opened the refrigerator door and she was able to see him by the refrigerator light; he stood against a counter in the kitchen while the bottle was being warmed.

The entire episode lasted about 15 minutes; during that time the man repeatedly said that he wanted more money, inquired about any firearms which the Browns might have, stated that he did not intend to harm them or the child, but told them to sit in the living room and not move or else he would return with a pistol which he had in his car. He then left and the Browns heard a car leave the driveway at a high rate of speed, without lights, and sending gravel flying. Mrs. Brown then called the police. She gave them a description of the man, his clothing, and his car; the police returned with a photograph and she identified the person in it as the assailant. She then made an in-court identification of defendant.

These two were the principal witnesses for the State. Other officers were called and their testimony corroborated that of the deputy. Mr. Brown testified and his evidence corroborated that of Mrs. Brown. In particular, he stated that he had seen the assailant holding a knife against Mrs. Brown; he estimated that its blade was about three inches long but he was unable to observe its handle. He examined a knife which had been seized from the defendant when he was arrested and stated that its blade resembled the one he had seen on the night of the offenses.

Defense testimony centered about establishing impeachment of the Browns, particularly with reference to the knife and their ability to observe the assailant.

Other factual matters will be developed as necessary in discussion of the issues. The issues raised on appeal are: (1) error by the trial court in denying a motion in arrest of judgment for failure of the information to state the offense of home invasion; (2) error by the trial court in allowing the deputy to testify before the victims had done so; (3) error in the use of a single photograph in identification; and (4) error in denying a continuance when private counsel replaced the public defender.

The first issue requires an examination of the charging documents. An information was filed in two counts. With the omission of the formal portions, the home invasion count recited:

"that said defendant, not a peace officer acting in the line of duty, without authority knowingly entered a dwelling of Brian and Monica Brown, located at R.R.2, Gillespie, Macoupin County, Illinois, knowing Brian and Monica Brown to be

present within said dwelling, and threatened the imminent use of force upon Brian and Monica Brown."

The count of armed robbery recited:

"that said defendant, while armed with a dangerous weapon, a knife, took property, being $103 in United States currency from the person of Monica Brown, by threatening the imminent use of force."

The language of the home-invasion statute (Ill. Rev. Stat. 1979, ch. 38, par. 12—11) provides:

"Sec. 12—11. Home Invasion. (a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

(2) Intentionally causes any injury to any person or persons within such dwelling place."

It will thus be seen that while the information alleges that the defendant threatened the imminent use of force, it omits "while armed with a dangerous weapon."

■ A similar situation was dealt with in *People v. Pettus* (1980), 84 Ill. App. 3d 390, 405 N.E.2d 489. In that case the omission was "without authority." It was held not to be a formal defect, curable under section 111—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—5), and the conviction for home invasion was reversed. In the case at bar the defendant filed a motion in arrest of judgment based on *Pettus*. The trial court denied the motion, holding that "without authority" and "while armed with a dangerous weapon" made *Pettus* distinguishable. We do not agree. The allegation of being armed with a dangerous weapon is, if anything, more essential to the offense than lack of authority. The trial court was in error in denying the motion.

The State argues that the element may be supplied from the second count of armed robbery. The same argument was rejected in *Pettus* and is again rejected here for the same reasons. Without the allegation of a dangerous weapon, the information appears to allege only burglary or assault.

The conviction and sentence for home invasion must therefore be vacated. However, it remains to be decided whether remandment for

resentencing must follow. This, in turn, depends on the extent to which, as revealed in the record, the trial judge took into consideration the home-invasion conviction in fixing the sentence for armed robbery.

If the record discloses that the trial judge considered the offenses separately and sentenced a defendant separately on each, there is no necessity for remand. (*People v. Kosanovich* (1979), 69 Ill. App. 3d 748, 387 N.E.2d 1061.) However, when the basis for sentencing is unclear, remand generally follows. (*People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588.) In *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, the supreme court indicated that a sentencing judge could take into consideration evidence of misconduct which did not result in a conviction. (Accord, *People v. Ely* (1982), 107 Ill. App. 3d 102, 437 N.E.2d 353.) It should be noted that both *La Pointe* and *Ely* were concerned with offenses which did not result in prosecution and thus did not address with precision the question presented here.

■ We have concluded that remandment for resentencing in the instant case is not warranted. While the trial judge's remarks were brief, he imposed separate sentences of differing lengths on the two charges. It is thus unlike *Medreno* where across-the-board sentences of 50 years each were imposed on three Class X felonies. The record here supports *prima facie* separate consideration of the offenses and would also indicate that the trial judge, for whatever reason, regarded home invasion as more serious than armed robbery under the circumstances.

Moreover, in view of defendant's past history (convictions in the State of Georgia for kidnaping, rape, and armed robbery; on parole in Illinois from these at the time of the offenses here) as revealed in the presentence report, together with charges pending at the time of the offenses (rape, deviate sexual assault, armed robbery, armed violence and aggravated kidnaping) in Montgomery County, we cannot believe that the trial judge would reduce the 20-year sentence imposed on the armed robbery count.

Defendant's second issue concerns the identification testimony of the deputy and the Browns. As noted above, the deputy testified as to a description of the assailant given to him by the Browns and his testimony was taken before that of the Browns. Objection was made to this as hearsay, but it was overruled.

The supreme court has dealt with the issue which is presented here. In *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, the court set forth rules to govern the admissibility of out-of-court identi-

fication. The court noted that if a third person were to testify that he saw or heard A identify B as the person who committed the offense, that would obviously and clearly be hearsay testimony and would not be admissible. However, the court went on to note that if A testifies that he had previously identified B and A's veracity is tested by cross-examination, the reason for excluding the third person's testimony would be removed. Then, after A has testified, the third person should be permitted to testify that he heard or saw A identify B because both A and the third person would be subject to cross-examination regarding the out-of-court identification. The court expressly stated: "Before the third person is permitted to testify as to A's identification of B, A should first testify as to his out-of-court identification." 81 Ill. 2d 571, 579, 411 N.E.2d 223, 227.

From the record here it is at once apparent that the procedure outlined in *Rogers* was not strictly followed. The deputy testified first and indicated the Brown's identification of defendant. He was followed by Mrs. Brown and then Mr. Brown. Thus, hearsay was admitted into the record.

The next inquiry must be whether such hearsay constitutes reversible error. It should be noted in passing that defendant failed to raise the point in his post-trial motion and therefore waiver could be applied. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Even in the absence of waiver, we find no reversible error. Such hearsay becomes reversible error only when it is used as a substitute for in-court identification and to strengthen weak identification. If it is merely cumulative, or is supported by positive identification and other corroborative circumstances, it is harmless. *People v. Sias* (1980), 91 Ill. App. 3d 1095, 415 N.E.2d 618.

In the case at bar, both Browns testified to their out-of-court identification and made a positive in-court identification of defendant; both were cross-examined on these subjects; both observed the defendant at close range for several minutes in the driveway and in the kitchen under reasonably good lighting conditions. It is therefore apparent that the purpose of the rule was satisfied. The deputy's testimony was not substitutionary and the victim's testimony was not weak.

■ We therefore hold that the error was harmless, although we are of the firm opinion that the procedure specified in *Rogers* should be followed by trial courts. No good purpose is served by inviting error when the supreme court has indicated a precise way to avoid it.

Defendant's third issue relates to the single-photograph method of identification. As has been indicated, the authorities, after receiving a

description of the assailant from the Browns, became suspicious of defendant and an officer obtained a photograph of defendant which he exhibited to the Browns shortly after the events occurred. Defendant contends that this was unreliable and that the trial court should have suppressed the identification, particularly since the photograph was exhibited to the Browns in the presence of each other.

Both the United States Supreme Court and the Illinois Supreme Court have established rules for a single-photograph display. (*Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967; *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. Elam* (1972), 50 Ill. 2d 214, 278 N.E.2d 76.) It would unduly lengthen this opinion to discuss in detail these authorities since the rules laid down in them are generally known and recognized. Briefly stated, these rules indicate that there is no *per se* prohibition against a single-photograph display, but the procedure is fraught with peril and must be handled with care. Each case will be judged on its own facts and circumstances and the issue is whether the procedure is so suggestive as to give rise to a substantial likelihood of irreparable misidentification. Factors to be considered in making the judgment are the opportunity of the witness to view the offender at the time of the offense, the witness' degree of attention, the accuracy of his prior description, the level of certainty demonstrated at confrontation, and the time between the offense and the confrontation. *Manson; Manion.*

As applied here, the factors weigh in favor of the trial court's decision. While defendant argues that much of the incident took place in darkness, there is considerable evidence to the contrary; the pole light in the driveway and the refrigerator light in the kitchen. Both Browns viewed the assailant at close range; their descriptions were apparently accurate since defendant almost immediately became a suspect and when he was apprehended within a few hours, the description of his person and his automobile were closely matched to what had been said to the officers. Another important factor is that the photograph was exhibited to the Browns less than two hours after the events.

■ We conclude that in the totality of the circumstances the out-of-court identification, even though suggestive, was reliable. Prompt on-the-scene identifications are common in the apprehension of offenders and are necessary. (*Manion.*) The display to the Browns in the presence of each other is a procedure not to be encouraged, but it is only another factor in the reliability equation.

Defendant's final contention is that it was an abuse of discretion

for the trial court to deny a continuance when defendant had obtained a privately retained attorney. Some background is needed to understand this argument. He was arrested on January 18, 1981, and counsel was appointed. Following arraignment, trial was set for April 6; various continuances were allowed, some of them on defendant's motion and others by agreement; a final trial date of June 17 was fixed. On the day before, June 16, a privately retained attorney filed his appearance and moved for continuance. Defendant informed the court that his attorney was representing him on separate charges in Montgomery County and that he wished the same attorney to represent him in the case at bar. The attorney informed the court that he had been retained in the Montgomery County matters during the middle of May.

The trial court allowed the substitution of attorneys but denied the motion for continuance. The attorney stated that he had reviewed the prior attorney's file but had not had the opportunity to interview witnesses. The trial court stated that he would be afforded that opportunity prior to the witnesses' testifying.

A motion for continuance is addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant. (Ill. Rev. Stat. 1979, ch. 38, par. 114—4(e).) The granting or denial of a request for continuance is to be determined under the particular facts and circumstances surrounding the request, which is directed of the sound discretion of the trial court, and a conviction will be reversed when it appears that a refusal to grant a continuance embarrassed the defendant, impeded preparation of his defense, or prejudiced his rights. (*People v. Harris* (1981), 95 Ill. App. 3d 1, 419 N.E.2d 489.) However, the action of the trial court will not be disturbed on appeal absent an abuse of discretion (*People v. Hayes* (1972), 52 Ill. 2d 170, 287 N.E.2d 465), and whether there has been an abuse of discretion depends upon the particular facts and circumstances of each case. *People v. Clark* (1956), 9 Ill. 2d 46, 137 N.E.2d 54.

■ In applying these rules to the case at bar, we find no error in the trial court's ruling. The defendant was not diligent. His private counsel had been retained for the Montgomery County matters approximately one month before the trial date in this case. Defendant was not embarrassed, impeded, or prejudiced. His new counsel showed himself thoroughly familiar with the case, ably cross-examined the State's witnesses and presented his own case in chief. Counsel did not indicate, even after conviction, that any further defense evidence would have been adduced in the event of continuance. Compare *Peo-*

*ple v. Sullivan* (1977), 52 Ill. App. 3d 666, 367 N.E.2d 1042.

In summary, the judgment and sentence of the circuit court of Macoupin County on the count of home invasion is vacated; the judgment and sentence on the count of armed robbery is affirmed. The cause is remanded to that court with directions to issue an amended *mittimus* reflecting the judgment of this court.

Vacated in part, affirmed in part, and remanded with directions.

GREEN, P.J., and TRAPP, J., concur.