THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL W. DAVISON, Defendant-Appellant.

Fourth District    No. 4—96—0777

Opinion filed November 6, 1997.

COOK, J., specially concurring.

Daniel D. Yuhas and Martin J. Ryan, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In August 1996, defendant, Daniel W. Davison, filed *pro se* a petition for postconviction relief, alleging various violations of his constitutional rights. In September 1996, the trial court dismissed his petition as patently without merit, pursuant to section 122—2.1(a)(2) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—2.1(a)(2)

(West 1994)). Defendant appeals, arguing that the court erred by summarily dismissing his petition. We affirm.

## I. BACKGROUND

In July 1991, the State charged defendant by information with three counts of home invasion (Ill. Rev. Stat. 1991, ch. 38, par. 12—11); two counts of attempt (aggravated criminal sexual assault) (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4, 12—14); one count of criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(1)); one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(1)); and one count of criminal trespass to a residence (Ill. Rev. Stat. 1991, ch. 38, par. 19—4). Pursuant to a plea agreement, defendant pleaded guilty to all of these charges except criminal trespass to a residence. In exchange for defendant's pleading guilty, the State dismissed the charge of criminal trespass to a residence and charges in a pending misdemeanor case (No. 91—CM—616). The State also agreed to offer a 90-year cap on imprisonment.

In July 1992, the trial court accepted defendant's guilty plea and sentenced him to 15 years on three separate counts of home invasion and 20 years for aggravated criminal sexual assault, with all sentences to be served consecutively, totaling 65 years in prison. (We note that the home invasion counts involved the homes of three different women.) The court did not enter judgment as to the remaining counts.

Defendant did not appeal his guilty plea or sentences, but in August 1996, after several time extensions, he filed *pro se* a petition for postconviction relief, alleging his constitutional rights were violated because he received ineffective assistance of counsel. In September 1996, the trial court dismissed his petition as patently without merit, pursuant to section 122—2.1(a)(2) of the Act (725 ILCS 5/122—2.1(a)(2) (West 1994)), and this appeal followed.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred by dismissing his *pro se* petition because it presented the gist of a meritorious claim that he was denied his constitutional right to effective assistance of trial counsel (U.S. Const., amends. VI, XIV). Specifically, defendant contends that his petition showed he received ineffective assistance of counsel for the following reasons: his trial counsel (1) failed to challenge the factual basis and sufficiency of the charges in counts VI and VIII, charging home invasion and aggravated criminal sexual assault, respectively; (2) refused to allow defendant to read the discovery materials the State provided to defense counsel; (3) failed to object to or file a motion *in limine* barring the use of defendant's

Veteran's Administration Medical Center (VAMC) records, which contained information about crimes with which defendant had never been charged; and (4) failed to advise defendant that he could have pleaded guilty but mentally ill.

■ A postconviction proceeding brought under the Act (725 ILCS 5/122—1 *et seq.* (West 1994)) constitutes a collateral attack on a judgment of conviction. The Act permits the trial court to summarily dismiss a nonmeritorious petition. 725 ILCS 5/122—2.1(a)(2) (West 1994)). *People v. Gaultney,* 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996); *People v. Lemons,* 242 Ill. App. 3d 941, 944, 613 N.E.2d 1234, 1238 (1993); *People v. Dredge,* 148 Ill. App. 3d 911, 913, 500 N.E.2d 445, 446-47 (1986).

■ To establish a claim of ineffective assistance of trial counsel, a defendant must satisfy the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). First, the defendant must prove that counsel made errors so serious, and counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. To show that counsel's conduct was deficient, the defendant must overcome the strong presumption that the challenged action or lack of action might have been the product of sound trial strategy. *People v. Griffin,* 178 Ill. 2d 65, 73-74 (1997).

Second, the defendant must establish prejudice—that is, he must prove that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The prejudice prong of *Strickland* entails more than an "outcome-determinative" test. *Griffin,* 178 Ill. 2d at 74. The defendant must also show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Griffin,* 178 Ill. 2d at 74.

■ When a guilty plea is challenged on ineffective assistance grounds, the prejudice prong of *Strickland* is satisfied if a reasonable probability exists that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370 (1985); *People v. Bien,* 277 Ill. App. 3d 744, 751, 661 N.E.2d 511, 516 (1996). The record should also demonstrate a reasonable probability that, but for counsel's errors, the defendant would have rejected the plea arrangement. *People v. Pugh,* 157 Ill. 2d 1, 15, 623 N.E.2d 255, 262 (1993).

■ If the ineffective assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not

decide whether counsel's performance was constitutionally deficient. *Griffin*, 178 Ill. 2d at 74.

### A. Counsel's Failure To Challenge Counts VI and VIII

Defendant first argues that his trial counsel erred by failing to challenge the factual basis and the sufficiency of the charges in counts VI and VIII. We disagree.

### 1. *Count VI* (*Home Invasion*)

■ Section 12—11(a) of the Criminal Code of 1961 (Code) provides that a person commits home invasion when he knowingly enters another's dwelling place when he knows or has reason to know that one or more persons are present, *and* (1) while armed with a dangerous weapon uses force or threatens the imminent use of force upon any person within the dwelling place whether or not injury occurs, *or* (2) intentionally causes any injury to any person or persons within such dwelling place. Ill. Rev. Stat. 1991, ch. 38, par. 12—11(a) (now 720 ILCS 5/12—11(a) (West 1994)).

Specifically, defendant contends that the information containing count VI was insufficient to charge him with home invasion. That information alleged that on December 13, 1990, defendant entered the dwelling place of L.C., knowing that she was inside, while armed with a dangerous weapon (a knife), and used or threatened to use force. At the guilty plea hearing in December 1991, defendant stated that he had not been armed with a knife, and the State agreed to strike "while armed with a dangerous weapon" from count VI. The trial court noted that it was still a Class X felony, and the State responded, "[i]t's still a Class X felony because he intended to commit the rape, [and] he did commit a rape." Neither defense counsel nor defendant disputed that statement.

■ Defendant now claims that trial counsel erred by not challenging the sufficiency of that charge based on its failure to include all the elements of home invasion. See Ill. Rev. Stat. 1991, ch. 38, par. 111—3(a) (now 725 ILCS 5/111—3(a) (West 1994)); *People v. Hughes*, 229 Ill. App. 3d 469, 592 N.E.2d 668 (1992); see also *People v. Pruden*, 110 Ill. App. 3d 250, 254, 442 N.E.2d 284, 287-88 (1982) (vacating conviction for home invasion because the charge lacked the words "while armed with a dangerous weapon"); *People v. Pettus*, 84 Ill. App. 3d 390, 393-94, 405 N.E.2d 489, 492 (1980) (reversing a conviction for home invasion when the phrase "without authority" was omitted from the information). However, the strict standard defendant asserts this court should apply when considering the sufficiency of count VI is appropriate *only* when the defendant has first challenged the charge by a pretrial motion to dismiss. In contrast, when

an information is attacked for the first time on appeal, it is sufficient if it contains adequate specificity to enable the defendant to prepare his defense and to plead a resulting conviction as a bar to a future prosecution arising from the same conduct. *People v. Pujoue*, 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440 (1975); *People v. Brown*, 259 Ill. App. 3d 579, 580, 630 N.E.2d 1334, 1335 (1994).

We note, however, that even the less stringent *Pujoue* standard of review is still too rigorous to apply to this case because defendant here challenges the sufficiency of count VI in a postconviction petition alleging ineffective assistance of counsel based upon his trial counsel's alleged failure to challenge the information before defendant pleaded guilty. Where the inadequacy of a charge is first raised in that context, the *Strickland* standard applies.

Considering first the prejudice prong of *Strickland*, we fail to see what possible prejudice defendant might have suffered as a result of his trial counsel's failing to file a pretrial motion to dismiss count VI on the ground that it did not adequately charge home invasion. Had trial counsel done so (and assuming *arguendo* the count was technically deficient), the trial court undoubtedly would have granted the motion to dismiss, and the State would then have filed an amended count, adding any previously missing statutory language. The record before us makes clear that defendant was willing to plead guilty to home invasion and contains no suggestion that (1) he was misled about the factual basis for the charge, or (2) the count's alleged technical deficiency affected his decision to plead guilty. Accordingly, defendant's petition fails the *Strickland* prejudice prong because it does not support a claim that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Bien*, 277 Ill. App. 3d at 751, 661 N.E.2d at 516.

### 2. *Count VIII (Aggravated Criminal Sexual Assault)*

■ The information for count VIII alleged that defendant knowingly and by force committed an act of sexual penetration with A.M.M. "while armed with a knife or dangerous weapon," in violation of section 12—14(a)(1) of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(1)). That section provides that the accused must have "displayed, threatened to use, or used a dangerous weapon."

Defendant contends for the first time on appeal that because the information alleges only that he was "armed with a knife," it fails to satisfy the statutory requirement that he "displayed, threatened to use, or used a dangerous weapon." Because defendant did not raise this claim in his postconviction petition, the issue is waived. 725 ILCS 5/122—3 (West 1994). However, even if defendant had raised

this issue in his petition, his trial counsel's alleged failure to challenge this charge in the trial court could not satisfy the prejudice prong of *Strickland* for the reasons we earlier discussed regarding count VI.

## B. Counsel's Failure To Provide Defendant with Discovery Materials

Defendant next argues that his right to effective assistance of counsel was violated when his trial counsel refused to allow him to read the State's discovery materials. Specifically, defendant contends that the sixth amendment *requires* defense counsel to allow him to read those materials (U.S. Const., amend. VI). He relies on *People v. Smith*, 268 Ill. App. 3d 574, 579-80, 645 N.E.2d 313, 317-18 (1994), in which the First District Appellate Court held that a postconviction petitioner is entitled to an evidentiary hearing on his claim that his trial counsel did not permit the petitioner to read the discovery materials.

In *Smith*, the petitioner had asked his attorney to subpoena police reports, and the police sent the reports to the petitioner's attorney. Counsel knew that petitioner was anxious to view the police reports but did not show them to him. The appellate court concluded that counsel's failure to provide the documents was not a tactical decision within the attorney's discretion. *Smith*, 268 Ill. App. 3d at 579, 645 N.E.2d at 318. The court reasoned that because resolution of this issue required inquiry into dealings between defense counsel and the petitioner that were outside the common-law record, the petitioner was entitled to a hearing on his postconviction petition. *Smith*, 268 Ill. App. 3d at 580, 645 N.E.2d at 318. For the following reasons, we disagree with *Smith* and decline to follow it.

■ A defendant in a criminal case has the right to decide certain issues in his case, even if his decision is contrary to his counsel's advice. Decisions belonging to the defendant are the following: (1) whether to plead guilty; (2) whether to waive a jury trial; (3) whether to testify in his own behalf; (4) whether to submit an instruction on a lesser charge at the conclusion of the evidence; and (5) whether to appeal. *People v. Brocksmith*, 162 Ill. 2d 224, 227-29, 642 N.E.2d 1230, 1232 (1994). Essentially, all other trial decisions remain in the province of defense counsel, with the proviso that counsel should consult with the defendant to the extent—within counsel's discretion—such consultation would be helpful. See *People v. Anderson*, 266 Ill. App. 3d 947, 956-57, 641 N.E.2d 591, 598-99 (1994), for a *partial* list of trial decisions that are counsel's —not the defendant's—to make.

■ Trial counsel's decision whether to provide his client with

discovery materials constitutes a matter of trial strategy and judgment that ultimately lies within counsel's discretion. Counsel might well think it not helpful for the defendant to read the discovery materials. An unknowledgeable client may put great weight upon or become distracted by discrepancies in the discovery that counsel understands are trivial or of no import to the defense. A defendant who challenges his attorney's strategic decisions based upon the defendant's reading of discovery materials might disrupt counsel's management of the case and undermine the attorney-client relationship.

Providing discovery materials to a defendant might also interfere with counsel's efforts to get his client to cooperate fully with counsel's efforts to understand the defendant's version of events. The defendant could become fixated on what the State's witnesses say happened, making it more difficult for counsel to get defendant focused on those matters that counsel knows—due to his or her vastly greater training and experience—are important to the case.

Furthermore, a holding that criminal defendants have a constitutional right to view all discovery materials would inevitably open the door to manifest abuse. Communications between defendants and their counsel are almost always private. Thus, a claim like that made in the present case by a postconviction petitioner that trial counsel violated this purported constitutional right could only be resolved by obtaining information available outside the record, effectively guaranteeing *at a minimum* that every convicted defendant making such a claim would be entitled to a postconviction hearing.

To further demonstrate the very significant problems such a holding could generate, we pose the following hypotheticals in which a convicted defendant asserts in his postconviction petition (and will so testify at a hearing on that petition, if one is held) that he asked his trial counsel if he could read the discovery materials but was denied the opportunity: (1) counsel dies in the interim between trial and postconviction petition and no other evidence exists to dispute defendant's claims; and (2) counsel testifies that he cannot recall his client requesting discovery materials, but counsel recalls that he did not give them to defendant. Further, although we have great respect for the ethics of the criminal defense bar, we must confront the possibility that a defense attorney could conspire with his former client by agreeing to testify that the attorney failed to provide the defendant with discovery materials, even though the defendant in fact either never requested to see those materials or was given them. Defendants in each of these three cases might well prevail on their claims for postconviction relief despite those claims having no merit.

The law cannot be that defenseless. Accordingly, we view *Smith* as unsound and decline to follow it.

Our holding does not diminish counsel's obligation to inform the defendant of important matters related to his case, and we recognize that counsel has a duty to respond to the defendant's requests for information. However, the issue here is not counsel's failure to communicate generally with the defendant, to inform him about the case, to keep him up-to-date on his status, or to return his phone calls. Instead, the issue is whether the defendant has *a constitutional right* to read discovery materials.

Our holding is not inconsistent with standards of professional conduct. The Supreme Court of Illinois has set forth Rules of Professional Conduct in article VIII of the supreme court rules, and Rule 1.4 of Professional Conduct provides as follows:

> "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." 134 Ill. 2d R. 1.4.

Further, we note that section 4—3.8 of the American Bar Association (ABA) Standards for Criminal Justice, regarding a defense attorney's duty to keep a client informed, uses essentially the same language, providing as follows:

> "(a) Defense counsel should keep the client informed of the developments in the case and the progress of preparing the defense and should promptly comply with reasonable requests for information.
>
> (b) Defense counsel should explain developments in the case to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." ABA Standards for Criminal Justice 4—3.8, at 176-77 (3d ed. 1993).

The commentary states that it is important to keep the client aware that the lawyer is actively attending to the client's interests. The commentary also provides as follows:

> "The client should be given sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued ***. In litigation, a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others. On the other hand, a lawyer ordinarily cannot be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information *con-*

*sistent with the duty to act in the client's best interests,* and the client's overall requirements as to the character of representation." (Emphasis added.) ABA Standards for Criminal Justice 4—3.8, Commentary, at 178 (1993).

## C. Counsel's Failure To Object to Introduction of Defendant's Mental Health Records at Sentencing

■■■ Defendant next argues that his counsel was ineffective for failing to object to—or file a motion *in limine* barring the use of— defendant's mental health records at sentencing. According to defendant, the State introduced these records, which contained notes from private, confidential therapy sessions describing conduct for which defendant had never been charged or convicted. Defendant contends that these records prejudiced him by "inciting the court to impose a longer sentence."

Contrary to defendant's assertion, the record shows that defendant introduced the records at issue. At the guilty plea hearing, defense counsel stated:

> "I would specially ask, [defendant] indicates there are medical records, medical history [taken] at the Veteran's Administration Hospital, which I would ask be included in the pre-sentence investigation and report."

The subsequently prepared presentence report included defendant's statements that (1) he molested an 11-year-old girl in 1988; (2) he raped a girl when he was 16; (3) he raped a 15-year-old girl when he was 23; and (4) he had been convicted in 1982 for rape and in 1986 for disorderly conduct.

At the sentencing hearing, defendant testified on his own behalf that he had received professional counseling at the VAMC from June to August 1988. On cross-examination, defendant testified that he told personnel at VAMC that (1) he had molested an 11-year-old girl in 1988; (2) he raped a girl when he was 16; (3) he raped a 15-year-old girl when he was 23; (4) his 1982 rape conviction was the third time he had committed rape.

The prosecutor argued that defendant's prior treatment had not worked and he was a danger to the public. Defense counsel argued defendant had sought help and asked the trial court to consider defendant's psychological problems when imposing sentence.

Defendant waived his privilege of confidentiality when he consented to reveal his mental health records, which he did by requesting, through his counsel, that the trial court consider those records. *People v. Bates,* 169 Ill. App. 3d 218, 224, 523 N.E.2d 675, 679 (1988). Section 10 of the Mental Health and Developmental Disabilities Confidentiality Act provides that a defendant's medical re-

cords and communications may be disclosed in a criminal proceeding in which the recipient of the mental health services introduces his mental condition or any aspect of his treatment for such a condition as an element of his claim or defense. Ill. Rev. Stat. 1991, ch. 91$^{1}/_{2}$, par. 810(a)(1) (now 740 ILCS 110/10(a)(1) (West 1994)).

In addition to waiver, defendant's argument fails because he has not shown that he was prejudiced by the admission of his mental health records. During sentencing, the trial court's reference to defendant's "activity as represented in the pre-sentence report" could have referred to his prior convictions for rape and disorderly conduct. Further, given defendant's prior convictions and the three different women upon whom defendant committed the terrible crimes to which he pleaded guilty (and the 90-year sentence the trial court could have imposed pursuant to the plea agreement's sentencing cap, instead of the 65-year sentence it did impose), we conclude that defendant fails to meet the *Strickland* standard that counsel's allegedly deficient performance prejudiced defendant.

### D. Counsel's Failure To Advise Defendant of the Option To Plead Guilty But Mentally Ill

■ Last, defendant argues that his counsel was ineffective for failing to advise defendant that he could plead guilty but mentally ill (GBMI) (Ill. Rev. Stat. 1991, ch. 38, par. 113—4(d)). Specifically, defendant contends that if he had pleaded GBMI, the State would be obligated to periodically examine him and provide treatment for his mental illness during his incarceration. 730 ILCS 5/5—2—6(b) (West 1994).

If a defendant offers to plead guilty but mentally ill, the trial court must order a psychological examination of the defendant and hold a hearing on his mental condition before accepting that plea. If the court is satisfied that a factual basis exists that a defendant was mentally ill at the time of an offense, the court may accept the GBMI plea. Ill. Rev. Stat. 1991, ch. 38, par. 113—4(d) (now 725 ILCS 5/113—4(d) (West 1994)).

In this case, defense counsel's failure to advise defendant that he might plead GBMI did not prejudice defendant, because even if he had been aware of that option, the record does not support defendant's contention that he was mentally ill at the time of the offenses or that the trial court would have accepted his GBMI plea. The record showed that defendant was admitted to the VAMC in June 1988 and diagnosed with pedophilia, voyeurism, and personality disorder. When the VAMC discharged him in August 1988, the discharge summary stated that (1) he had been diagnosed as having adjustment dis-

order with disturbance of conduct and personality order; and (2) he was "free of clinically apparent illness." The court could have found that a factual basis did not exist for finding defendant mentally ill in 1991 when he committed the crimes charged in this case.

Furthermore, defendant was subject to the same range of sentences whether he pleaded guilty or GBMI. Ill. Rev. Stat. 1991, ch. 38, par. 1005—2—6(a). Therefore, even if counsel had recommended that defendant plead GBMI and the trial court had accepted that plea, the outcome would have been the same. Accordingly, counsel's failure to advise defendant that he could plead GBMI did not prejudice defendant.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GREEN, J., concurs.

JUSTICE COOK, specially concurring:

I agree that defendants do not have a constitutional right to view all discovery materials and that the decision of which materials to furnish lies within defense counsel's discretion.

I do not share the majority's concern that defense attorneys will conspire with their former clients by agreeing to testify falsely on postconviction petitions. 292 Ill. App. 3d at 989. I disagree that it is necessary for us to construct any special rule in order to prevent such misconduct. In the unlikely event that such misconduct would occur, severe sanctions already exist to deal with it.