NO. 4-03-1065

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellee,

          v.

DAVID L. SAVAGE,

          Defendant-Appellant.

)

)

)

)

))))

Appeal from

Circuit Court of

Macon County

No. 02CF1458

Honorable

James Coryell, 

Judge Presiding.

_________________________________________________________________

JUSTICE MYERSCOUGH delivered the opinion of the court:

In July 2003, a jury convicted defendant, David L. Savage, of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 2002)).  The trial court later sentenced him to 25 years' imprisonment and imposed a street-value fine totaling $96,070.  Prior to defendant's conviction and while he was incarcerated and awaiting trial, defendant filed a motion for relief from prosecutorial misconduct of Macon County jail officials who conducted a shakedown of jail cells with the intention of confiscating police reports held in the possession of inmates.

The shakedown was conducted after the Macon County State's Attorney's office informed the sheriff's department and jail officials that Supreme Court Rule 415(c) (134 Ill. 2d R. 415(c)) requires an attorney to keep pretrial discovery in his or her exclusive custody.  The trial court denied defendant's prosecutorial-misconduct motion, and he was convicted and sentenced as stated.   

Defendant appeals, arguing (1) the trial court erred when it denied his motion for relief from prosecutorial misconduct, (2) the enforcement of Rule 415(c) against only indigent and incarcerated defendants violates equal protection, (3) he is entitled to a $1,405 credit against his street-value drug fine pursuant to section 110-14 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/110-14 (West 2002)), and (4) the court's written judgment order should be amended to reflect that he was convicted pursuant to section 401(a)(2)(D) of the Illinois Controlled Substances Act (Controlled Substances Act) (720 ILCS 570/401(a)(2)(D) (West 2002)) and not section 402(a)(2)(D) (720 ILCS 570/402(a)(2)(D) (West 2002)).  We affirm the court's judgment as modified and remand with directions. 

I. BACKGROUND

In December 2002, defendant was charged with unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 2002)) and unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(D) (West 2002)).  In April 2003, while he was incarcerated in the Macon County Correctional Center and awaiting trial, correctional officers conducted searches of inmate cells and confiscated the State's pretrial-discovery answers (specifically police reports) found in the possession of inmates.  That same month, defendant filed a motion for relief from prosecutorial misconduct.

Defendant's motion alleged the search of inmate cells and the confiscation of the State's pretrial-discovery answers and police reports was improper because it impaired his ability to be effectively represented by his counsel and constituted an interference with the attorney-client relationship.  Specifically, he maintained the actions taken were improper because (1) Rule 415(c) does not prohibit defense counsel from transferring custody of the State's answers to pretrial discovery to a client; (2) the State's Attorney's office had no authority to direct or request that the jail conduct a shakedown and confiscate the State's pretrial-discovery answers; and (3) documents including "notes, attorney correspondence, legal research, and other private papers" were confiscated during the shakedown. 

Testimony at the hearing on defendant's motion indicated that sometime prior to the shakedown, the State's Attorney's office became aware that defense attorneys in Macon County were providing copies of the State's pretrial-discovery answers, and specifically police reports, to their clients.  Immediately prior to the search and seizure at issue, they also became aware of instances of witness intimidation that they suspected were based upon information contained in police reports in the possession of jail inmates.  The State's Attorney's office interpreted Supreme Court Rule 415(c) (134 Ill. 2d R. 415(c)) as prohibiting defense attorneys from giving pretrial-discovery materials, such as police reports, to their clients and requiring instead that they remain in the exclusive possession of counsel. 

The State's Attorney's office sent letters to defense attorneys believed to be violating the Rule 415(c).  The letters requested the attorneys retrieve police reports that had been left in the possession of their clients in violation of Rule 415(c).  They also entered into discussions with individuals from the sheriff's department and the jail to decide how to deal with inmate possession of police reports and the State's pretrial-discovery answers in general.  Through these discussions it was decided that a shakedown of the jail would be conducted during which such documents would be confiscated along with other contraband.  Testimony indicated shakedowns occurred at the jail regularly, two to three times a month.  When the documents here were confiscated, it was time for a shakedown to be conducted. 

Assistant State's Attorneys Jack Ahola and Tamara Wagoner were present for the shakedown but did not enter into any inmate cells.  During the shakedown, correctional officers went into the cells and searched for police reports and contraband in general.  When the officers had questions about whether a particular document should be seized, they directed their inquiries at either the assistant jail superintendent or one of the assistant State's Attorneys.  These three individuals only conducted cursory inspections of the documents they were shown and did not read any of what was written on them.  Once material was seized from a cell, it was put into a manila envelope with the inmate's name written on the outside.  The envelopes were then signed by the assistant jail superintendent and given to Ahola and Wagoner.  Approximately 250 to 260 inmates were in the jail when this particular shakedown occurred and roughly 40 of them had documents confiscated. 

The confiscated documents were held in the State's Attorney's office.  The envelopes containing the confiscated documents were only opened at the request and in the presence of defense attorneys who wanted to inspect their contents.  Shortly after the shakedown, defense attorneys were informed they could obtain their client's seized materials by signing a statement acknowledging the requirements of Rule 415(c) and agreeing not to return the seized documents to their respective clients.  Some attorneys complied, signed the document, and received their client's confiscated documents back.  Other attorneys, including defendant's counsel, refused, and the confiscated documents were not returned. 

Finally, several individuals who were incarcerated when the shakedown occurred testified as to what documents had been taken from them.  Besides the State's pretrial-discovery answers and police reports, the witnesses testified that other seized items included notes taken in preparation of defense, letters or paperwork from their attorneys, legal papers in general, and legal research.  Further, some of the confiscated police reports or pretrial-discovery items had inmates' notes on them.  Additionally, one witness testified that another inmate's police report was taken from his cell.  Defendant has not alleged that anything other than discovery answers and police reports were taken from his cell. 

After taking the matter under advisement, the trial court denied defendant's motion.  In a lengthy docket entry, the court concluded "[i]t is a violation of [Rule] 415(c) for defense counsel to give copies of discovery to his client (or others) and to not keep them in his exclusive custody."  Further, it stated materials other than discovery were only confiscated inadvertently and as a result of defense counsels' violation of Rule 415(c) and efforts by the State's Attorney's office and jail officials to avoid invading the attorney-client privilege by only conducting cursory inspections of the seized documents.  Finally, the court stated that even if the seizure was improper, it was not "such a deliberate intrusion upon the confidential attorney-client relationship to justify any sanction more severe than attribution of delay occasioned thereby to the State."  The court then held that based upon the circumstances, such a delay would not be attributable to the State.   

In July 2003, defendant's jury trial was held and he was convicted of unlawful possession of a controlled substance with intent to deliver pursuant to section 401(a)(2)(D) of the Controlled Substances Act (720 ILCS 570/401(a)(2)(D) (West 2002)).  In August 2003, defendant filed a motion for judgment of acquittal, or in the alternative, for a new trial, arguing, in relevant part, that the trial court erred by denying his pretrial motion for relief from prosecutorial misconduct.  

In September 2003, the trial court denied defendant's posttrial motion and sentenced him to a term of 25 years' imprisonment and imposed a street-value fine of $96,070.  Additionally, the court ordered defendant be given credit for 281 days previously served from November 29, 2002, to September 5, 2003.  On September 8, 2003, the court's written judgment order was filed stating defendant was convicted of unlawful possession of a controlled substance pursuant to section 402(a)(2)(D) of the Controlled Substances Act (720 ILCS 570/402(a)(2)(D) (West 2002)). 

On September 30, 2003, defendant filed a postsentencing motion, arguing only that his sentence was excessive.  In December 2003, the trial court denied defendant's postsentencing motion.  

This appeal followed. 

II. ANALYSIS

A. Prosecutorial Misconduct

On appeal, defendant argues the trial court erred in denying his motion for relief from prosecutorial misconduct.  Specifically, he contends he was deprived of his right to effective assistance of counsel when the State's Attorney's office (1) usurped the role of the trial court by imposing its own interpretation of Supreme Court Rule 415(c) (134 Ill. 2d R. 415(c)) and coordinated a shakedown of the jail to seize, as contraband, police reports and other items of the State's pretrial-discovery answers and (2) seized and held in its possession privileged attorney-client communications.  The State contends its actions were proper; however, in the alternative, it argues defendant has failed to demonstrate he was prejudiced by any improper action. 

Since the facts of this case are not disputed and this issue involves only questions of law, our review is 
de
 
novo
.  
People v. Bracey
, 213 Ill. 2d 265, 270, 821 N.E.2d 253, 256 (2004). 

1. 
Interpretation
 
of
 
Rule
 
415(c)

Defendant first contends it was error for the State's Attorney's office to unilaterally interpret Supreme Court Rule 415(c) (134 Ill. 2d R. 415(c)) and then seek to enforce that interpretation by coordinating a jail shakedown.  On appeal, defendant does not argue that the State's interpretation of Rule 415(c) was necessarily incorrect; instead, he maintains that determinations regarding the interpretation and enforcement of the rule should have been reserved for the trial court. 

Supreme Court Rule 415(c), entitled "Custody of Materials," provides as follows: 

"Any materials furnished to an attorney pursuant to these rules shall remain in his exclusive custody and be used only for the purposes of conducting his side of the case, and shall be subject to such other terms and conditions as the court may provide."  134 Ill. 2d R. 415(c). 

Further, the committee comments for Rule 415(c) state: 

"If the materials to be provided were to become, in effect, matters of public availability once they had been turned over to counsel for the limited purposes which   pretrial disclosures are designed to serve, the administration of criminal justice would likely be prejudiced.  Accordingly, this paragraph establishes a mandatory requirement in every case that the material which an attorney receives shall remain in his exclusive custody.  While he will undoubtedly have to show it to, or at least discuss it with, others, he is not permitted to furnish them with copies or let them take it from his office."  134 Ill. 2d R. 415(c), Committee Comments at 357.

A State's Attorney has several powers and duties, including acting as an attorney and legal advisor for county officials with respect to all official-business matters.  
Ashton v. County of Cook
, 384 Ill. 287, 297, 51 N.E.2d 161, 166 (1943).  Section 3-9005(a)(7) of the Counties Code (55 ILCS 5/3-9005(a)(7) (West 2002)) specifically provides that "[t]he duty of each State's [A]ttorney shall be *** [t]o give his opinion, without fee or reward, to any county officer in his county, upon any question or law relating to any criminal or other matter, in which the people or the county may be concerned." 

Additionally, the Illinois Administrative Code (Administrative Code) provides for "[r]andom, unannounced, irregularly scheduled shakedowns of [county jail] detainees and their quarters *** to detect the presence of weapons and other contraband."  20 Ill. Adm. Code ྷ701.140(c)(12) (Conway-Greene CD-ROM March 2002).  It further requires that jail administrators establish their own written manual of policies and regulations for the operation of a jail.  20 Ill. Adm. Code ྷ701.10(b) (Conway-Greene CD-ROM March 2002).  

In 
Bell v. Wolfish
, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979), the United States Supreme Court was called upon to determine the constitutionality of various confinement conditions for pretrial detainees.  This court has previously cited portions of 
Bell
 that discussed general principles which informed the 
Bell
 Court's analysis of conditions of pretrial confinement when ruling on the reasonableness of a jail policy regarding strip searches.  
People v. Calvert
, 326 Ill. App. 3d 414, 422-23, 760 N.E.2d 1024, 1031 (2001).

"[B]ecause the problems that arise in the daily operation of a corrections facility are not susceptible to easy solutions, prison administrators '
should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" 
 
Calvert
, 326 Ill. App. 3d at 423, 760 N.E.2d at 1031, quoting 
Bell
, 441 U.S. at 547, 60 L. Ed. 2d at 474, 99 S. Ct. at 1878. 

 Finally, this court has also held that a defendant does not have a constitutional right to read discovery materials and an attorney's decision as to whether to provide his or her client with such materials is a matter of trial strategy and is within counsel's discretion.  See 
People v. Davison
, 292 Ill. App. 3d 981, 988-89, 686 N.E.2d 1231, 1236 (1997) (defense counsel's refusal to allow a defendant to read discovery materials does not amount to ineffective assistance of counsel). 

Here, defendant contends the State's Attorney's office acted improperly when it orchestrated a shakedown of the jail during which pretrial-discovery materials in the possession of inmates were confiscated.  However, a review of the record reveals the actions of the State's Attorney were not inappropriate and instead constituted the fulfillment of his official duties.  A State's Attorney, as an advisor to county officials, is permitted to give his or her opinion as to matters of official business.  In this case, the State's Attorney believed Rule 415(c) was being violated by defense counsel who transferred custody of discovery materials to their clients within the jail.  Further, it advised the sheriff's department and jail officials as to the violation and a possible solution to prevent further violations. 

Moreover, nothing in the record suggests anyone from the State's Attorney's office ordered the shakedown at issue.  Instead, testimony at the hearing on defendant's prosecutorial-misconduct motion reveals members of the State's Attorney's office brought Supreme Court Rule 415(c) to the attention of the sheriff's department and jail officials.  Thereafter, discussions were held concerning inmate possession of police reports in the jail.  The State's Attorney's office then requested a shakedown for these reports be conducted, and jail officials agreed.  Further, testimony of the assistant jail superintendent indicated the shakedown was conducted under normal conditions and the jail was due to have its regularly conducted shakedown at that time.  

Jail officials are permitted to establish regulations and policies for jail operations beyond the minimum standards already required by statute (730 ILCS 125/0.01 through 25 (West 2002)) and the Administrative Code (20 Ill. Adm. Code part 701 (Conway-Greene CD-ROM March 2002)).  See 20 Ill. Adm. Code ྷ701.10(b) (Conway-Greene CD-ROM March 2002).  Additionally, they have broad discretion in establishing such regulations and policies.  In this case, upon being advised of a violation of a supreme court rule, jail officials took steps to prevent further violation of that rule.  Specifically they implemented a policy requiring confiscation of the State's pretrial-discovery answers.  Thus, the decision to confiscate such materials as contraband was made by jail officials, not the State's Attorney's office. 

Although defendant argues the State's Attorney's office should have first sought resolution of this issue with the trial court, a State's Attorney should not be required to seek permission of the court prior to fulfilling the duties of his office.  These duties exist independently of the court. 

2. 
Seizure
 
of
 
Privileged
 
Communications

Defendant also contends the attorney-client privilege was violated during the shakedown when privileged attorney-client communications were seized and held in the State's Attorney's office.  He maintains this invasion of the attorney-client privilege was a violation of his sixth amendment right to effective assistance of counsel.  

The sixth amendment to the United States Constitution  guarantees effective assistance of counsel for criminal defendants.  U.S. Const., amend. VI.  
The essence of this right is privacy of communication with counsel
.  
People v. Knuckles
, 165 Ill. 2d 125, 136, 650 N.E.2d 974, 979 (1995).  Additionally, communications made in confidence by a defendant to his or her attorney are protected from disclosure by the attorney-client privilege.  
People v. Childs
, 305 Ill. App. 3d 128, 136, 711 N.E.2d 1151, 1157 (1999).  A violation of the attorney-client privilege may result in the denial of effective assistance of counsel.  
Knuckles
, 165 Ill. 2d at 136, 650 N.E.2d at 979.

Here, defendant contends the State's Attorney's office violated the attorney-client privilege and his sixth amendment right to effective assistance of counsel when it held privileged attorney-client communications in its possession.  However, defendant has never alleged that privileged communications were taken from him during the shakedown.  Instead, he has only asserted that the State's pretrial-discovery answers, including police reports, were confiscated from his cell.  Such documents do not constitute privileged attorney-client communications and therefore the State's possession of them did not violate either the attorney-client privilege or defendant's sixth amendment right to effective assistance of counsel.   

B. Equal Protection

Defendant next argues that Rule 415(c) violates equal protection because no rational basis exists for its distinction between 
pro
 
se
 defendants, who may possess pretrial-discovery materials, and those represented by counsel, who may possess such materials
.  Additionally, he contends the enforcement of Rule 415(c) in this case violated equal protection because action was taken against only incarcerated defendants and not those defendants who were able to post bond and get out of jail.

The guarantee of equal protection requires that similarly situated individuals be treated similarly.  
People v. Breedlove
, 213 Ill. 2d 509, 518, 821 N.E.2d 1176, 1182 (2004).  However, the drawing of distinctions among different categories of people in a rule or statute is not completely forbidden, so long as the distinction that is made is proper.  
Breedlove
, 213 Ill. 2d at 518, 821 N.E.2d at 1182.  Where a distinction has been drawn, and the rule or statute involved does not affect a fundamental right or involve a suspect class, a rational-basis test must be satisfied.  
Breedlove
, 213 Ill. 2d at 518, 821 N.E.2d at 1182. 

Under the rational-basis test, a reviewing court must determine whether the means employed by a rule or statute to achieve its stated purpose are rationally related to that goal.  
Breedlove
, 213 Ill. 2d at 518, 821 N.E.2d at 1182.  A court's review under the rational-basis test is limited and deferential.  
Breedlove
, 213 Ill. 2d at 518, 821 N.E.2d at 1182.  Further, a rule or statute "carries a strong presumption of constitutionality and must be sustained if any set of facts can reasonably be conceived to justify the classification."  
Breedlove
, 213 Ill. 2d at 518-19, 821 N.E.2d at 1182. 

Selective enforcement of a rule or statute that is based upon unjustifiable standards or arbitrary classifications also violates equal protection.  
City of Champaign v. Sides
, 349 Ill. App. 3d 293, 300, 810 N.E.2d 287, 295 (2004).  However, if the rule or statute is rationally based, then the conscious exercise of selective enforcement is not, in and of itself, a violation of equal protection.  
Sides
, 349 Ill. App. 3d at 300, 810 N.E.2d at 295.  Finally, whether a rational basis exists is a question of law and is subject to 
de
 
novo
 review.  
People v. Botruff
, 212 Ill. 2d 166, 177, 817 N.E.2d 463, 469 (2004). 

Here, defendant contends Rule 415(c) creates an unlawful distinction between defendants represented by counsel and those appearing 
pro
 
se
.  Specifically, he argues that the effect of Rule 415(c) is to prevent defendants represented by an attorney from possessing, or having custody of, pretrial-discovery materials while defendants who represent themselves 
are free to hold such materials in their exclusive possessions.  Defendant maintains that no rational basis lies for such a distinction and thus Rule 415(c) violates equal protection. 

As Rule 415(c) does not involve any fundamental right or suspect class, it need only satisfy a rational-basis test.  The purpose of Rule 415(c) it to prevent pretrial-discovery materials from becoming "matters of pubic availability once they had been turned over to counsel."  134 Ill. 2d R. 415(c), Committee Comments, at 357.  Thus, the inquiry of this court is whether the means employed by the rule, 
i.e.
, the regulation of attorney conduct, is rationally related to its stated purpose of preventing public dissemination of pretrial discovery
.  For the reasons that follow, we conclude the rational-basis test has been satisfied and, therefore, Rule 415(c) does not violate equal protection.   

The supreme court rules on discovery for criminal cases apply "in all criminal cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary."  188 Ill. 2d R. 411.  Additionally, the sixth amendment to the United States Constitution provides criminal defendants with the right to be represented by counsel.  U.S. Const., amend. VI.  Specifically, under Illinois law, an indigent defendant's right to appointed counsel applies "[i]n all cases, except where the penalty is a fine only."  725 ILCS 5/113-3(b) (West 2002). 

Given these specific rights to counsel and the application of the mandatory criminal discovery rules to cases involving more serious criminal offenses, it is not unreasonable for the drafters of Rule 415(c) to have believed most criminal defendants in cases in which the discovery rules apply would be represented by counsel.  If most criminal defendants would be represented by counsel
, it stands to reason that regulation of that counsel's conduct would be an effective way to reach Rule 415(c)'s stated goal of protecting discovery materials from public availability.

Moreover, 
pro
 
se
 defendants have a need to possess the State's pretrial-discovery answers.  These defendants act as their own attorneys and are subject to the same requirements as counsel for individuals who are not 
pro
 
se
. 

Additionally, the enforcement of Rule 415(c) in this case does not violate equal protection.  Testimony at the hearing on defendant's prosecutorial-misconduct motion indicated the State's Attorney's office had become aware that jail inmates were in possession of discovery materials in violation of Rule 415(c).  The record does not reflect similar information was received with regard to defendants outside of the jail.  Thus, rather than arbitrarily enforce Rule 415(c), action was taken to enforce its requirements where known violations of the rule had occurred.

This court recognizes the impossibility of enforcing Supreme Court Rule 415(c) as well as defense counsel's need to share discovery materials with defendant in order to prepare an adequate defense.  However, changes in supreme court rules are subject to a committee review and supreme court passage, not to this court.

C. Street-Value Fine

Defendant next argues he is entitled to a $1,405 credit against the street-value drug fine imposed by the trial court because of the 281 days he spent in pretrial detention.  The State concedes this issue.  

Section 110-14 of the Criminal Procedure Code (725 ILCS 5/110-14 (West 2002)) states as follows:

"Any person 
incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant.
"  

A defendant may request a section 110-14 credit 
for the first time on appeal.  
People v. Woodard
, 175 Ill. 2d 435, 457, 677 N.E.2d 935, 945-46 (1997).  

Here, the trial court awarded defendant a sentence credit of 281 days for the time he spent in pretrial detention.  It did not award defendant the $5 
per
 
diem
 credit contained in section 110-14.  Since defendant may request a section 110-14 credit on appeal, and because he meets all of the requirements of that section, we remand with instructions that the court amend its written judgment order and award defendant a credit of $5 a day for each of the 281 days he spent in pretrial detention. 

D. Amendment of Written Judgment 

Finally, defendant contends the trial court's written judgment order should be corrected to reflect that he was convicted of unlawful possession of a controlled substance with intent to deliver pursuant to section 401(a)(2)(D) of the Controlled Substances Act (720 ILCS 570/401(a)(2)(D) (West 2002)) rather than simple possession pursuant to section 402(a)(2)(D) (720 ILCS 570/402(a)(2)(D) (West 2002)).  The State also concedes this issue. 

When an
 oral pronouncement of judgment and a trial court's written judgment are in conflict, it is the oral pronouncement that is controlling.  
People v. Smith
, 242 Ill. App. 3d 399, 402, 609 N.E.2d 1004, 1006 (1993).  
Section 401 of the Controlled Substances Act makes it unlawful for any person to possess a controlled substance with the intent to deliver.  720 ILCS 570/401 (West 2002).  Alternatively, section 402 only makes it unlawful for a person to knowingly possess a controlled substance.  720 ILCS 570/402 (West 2002). 

In this case, the jury convicted defendant of unlawful possession with the intent to deliver.  Further, before the jury was instructed, the State 
moved to dismiss the charge against defendant based solely on simple possession (720 ILCS 570/402(a)(2)(D) (West 2002)) and the trial court granted the motion.  Thus, it is clear from the record defendant was convicted pursuant to section 401 of the Controlled Substances Act rather than section 402.  Since it is clear the jury convicted defendant pursuant to section 401, and the court's written judgment order is inconsistent with that oral pronouncement, we remand with instructions that the trial court amend its written order of judgment to reflect that defendant was convicted of unlawful possession of a controlled substance with intent to deliver pursuant to section 401(a)(2)(D) (720 ILCS 570/401(a)(2)(D) (West 2002)). 

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment and remand with instructions that the court amend its written judgment order to (1) award defendant a credit of $5 a day toward his street-value fine for each of the 281 days he spent in pretrial detention and (2) reflect that defendant was convicted of unlawful possession of a controlled substance with intent to deliver pursuant to section 401(a)(2)(D) of the Controlled Substances Act (720 ILCS 570/401(a)(2)(D) (West 2002)).  

Affirmed as modified and cause remanded with directions.

McCULLOUGH, J., concurs.

APPLETON, J., specially concurs.

JUSTICE APPLETON, specially concurring:

I concur with the decision of the majority that the conduct of the State's Attorney and the personnel at the Macon County jail was, even if erroneous, harmless with regard to the evaluation of defendant's trial, conviction, and sentence.  I write separately because I believe the actions of agents of the State did violate defendant's rights to counsel guaranteed by the sixth amendment (U.S. Const., amend. VI).

"[T]he essence of the [s]ixth [a]mendment right is *** privacy of communication with counsel."  
United States v. Rosner
, 485 F.2d 1213, 1224 (2d Cir. 1973).  Reliance on Supreme Court Rule 415(c) as authority to contravene the United States Constitution, as the State does here, is misplaced.  That rule is one of admonition to counsel, not to the criminal defendant with whom counsel communicates.  This may be the reason that in the collective experience and memory of the panel, we have never before been made aware of a jail shakedown for the purpose of taking from prisoners written communications from their lawyers.

In oral argument, the State agreed that if defense counsel had reduced the contents of each police report to letter form, including even the names and addresses of witnesses, no violation of the rule would have occurred.  Given that admission, one would easily wonder what actual security purpose is served by Rule 415, especially compared to its potential constitutional infirmity.  It is constitutionally required for counsel to advise their clients of the nature and extent of the evidence facing them in order for the client to make informed decisions concerning his or her case.  
People v. Bien
, 277 Ill. App. 3d 744, 751, 661 N.E.2d 511, 516 (1996).  That counsel do so in the most expeditious manner should not subject them to sanction or their clients to a shakedown search.